Brian James WESTENDORF, Appellee,

v.

IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION, Appellant.

No. 86–728.

Supreme Court of Iowa.

Feb. 18, 1987.

Thomas J. Miller, Atty. Gen., and Merrell M. Peters, Asst. Atty. Gen., for appellant.

Brian James Westendorf, pro se.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and WOLLE, JJ.

WOLLE, Justice.

The Iowa Department of Transportation (department) revoked the driver's license of plaintiff Brian Westendorf pursuant to Iowa Code section 321B.16 (1985) (authorizing revocation when a vehicle operator's implied-consent chemical test demonstrates alcohol intoxication). The district court on judicial review reversed the agency decision, holding that a police officer did not have probable cause to stop the vehicle Westendorf was driving and impliedly holding that the adverse test result should therefore have been excluded from evidence. We disagree with the district court's use of a probable cause standard and application of an exclusionary rule in this license revocation proceeding which is civil and not criminal in nature. We reverse the district court ruling and thereby uphold the department's revocation of Westendorf's license.

In the early morning hours of April 21, 1985, a New Hampton police officer received a radioed transmission from the Chickasaw County sheriff's department reporting an anonymous phone call it had received. The sheriff's department dispatch relayed the caller's message that a red Chevrolet Nova driven by Westendorf was "tearing up and down" the streets of New Hampton. While the police officer sought to locate the vehicle, he received another communication from the sheriff's department informing him of a second citizen complaint about Westendorf. In this second radio dispatch, the sheriff's department reported that an identified caller declared that "he thought Brian Westendorf was intoxicated" and expressed concern because he believed his daughter was with Westendorf.

Thereafter the police officer spotted Westendorf driving the car and required him to stop and exit the vehicle. The officer detected the odor of alcohol on Westendorf's breath and noted that his balance was "somewhat unsure, unsteady." He asked for and received a preliminary breath sample from the plaintiff which, when tested, yielded a positive result. The officer arrested Westendorf for violating Iowa Code section 321.281 (the criminal offense of operating while under the influence of alcohol). A breath test which Westendorf consented to take showed an alcohol concentration of ten hundredths or more, and the officer revoked Westendorf's license pursuant to Iowa Code section 321B.16.

Westendorf first challenged the license revocation before the agency, but a hearing officer upheld the revocation following a contested case hearing, and a reviewing officer affirmed the hearing officer's decision. *See* Iowa Code § 321B.26. On judicial review of that final agency decision, however, the district court reversed the revocation, finding it was unsupported by substantial evidence in the record as a whole. The court wrote:

> There is simply no basis in the evidence to find that the officer had probable cause to stop the plaintiff at the time he did and then proceed to administer the test which has resulted in the suspension.

We first review the statutory authority within Iowa Code chapter 321B and evidence in the administrative record on which the department acted in revoking Westendorf's license. We then examine the district court's use of both a probable cause test and exclusionary rule, deciding whether either was applicable in this license revocation proceeding.

I. *Elements of License Revocation Under Section 321B.16.*

Persons who drive motor vehicles while intoxicated risk loss of their driving privileges by reason of several statutes

which authorize revocation by the department in administrative proceedings or the court in criminal proceedings. *See State v. Tuitjer*, 385 N.W.2d 246 (Iowa 1986) (interpreting habitual traffic offender statute and referring also to other statutes authorizing license revocation). In this case the department revoked Westendorf's driver's license pursuant to Iowa Code section 321B.16, which provides in pertinent part:

> Upon certification by the peace officer that there existed reasonable grounds to believe that the person had been operating a motor vehicle in violation of section 321.281, that there existed one or more of the necessary conditions for chemical testing described in section 321B.4, subsection 1, and that the person submitted to chemical testing and the test results indicated an alcohol concentration of ten hundredths or more, the department shall revoke the person's license or permit to drive....

The reference to section 321.281 is to the crime of operating while under the influence, while the reference to section 321B.4(1) is to four additional conditions for chemical testing, only one of which must be satisfied, which are:

> a. A peace officer has lawfully placed the person under arrest for violation of section 321.281.
>
> b. The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.
>
> c. The person has refused to take a preliminary breath screening test provided by this chapter.
>
> d. The preliminary breath screening test was administered and it indicated an alcohol concentration of ten hundredths or more.

▪ When we consider the evidence presented during the contested case hearing before the agency, without regard to the district court's use of a probable cause test and application of an exclusionary rule, the statutory conditions for revocation by the department were clearly satisfied. The chemical test indicated intoxication, satisfying the condition of section 321B.4(1)(d).

The other three conditions of section 321B.16 were also met. First, the officer had reasonable grounds to believe Westendorf had been operating while intoxicated, because he had received two phoned complaints concerning reckless driving and thereafter detected the odor of alcohol on Westendorf's breath, observed his unsteady gait, and obtained a positive result from the preliminary breath test. *See Saunders v. Commissioner of Public Safety*, 226 N.W.2d 19, 22 (Iowa 1975); *Shellady v. Sellers*, 208 N.W.2d 12, 14 (Iowa 1973). Second, Westendorf did submit to chemical testing. And third, his test result did indicate an alcohol concentration of ten hundredths or more.

Had the evidence demonstrated that any one of the listed statutory conditions was not present—for example that the officer did not have "reasonable grounds to believe Westendorf had been operating the motor vehicle in violation of section 321.-281" the department would not have been warranted in revoking Westendorf's driver's license. But the evidence did satisfy the statutory requirements for revocation.

II. *Applicability of a Probable Cause Test.*

Was the district court warranted in applying a "probable cause to stop" test? Iowa statutes do not impose such a requirement and neither do cases applying the fourth amendment to investigatory stops of motor vehicles. In *State v. Lamp*, 322 N.W.2d 48 (Iowa 1982), our court clearly articulated the "reasonable cause" test for investigatory stops:

> It is well settled that the fourth amendment requires reasonable cause to stop a vehicle for investigatory purposes. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); *State v. Cooley*, 229 N.W.2d 755, 759 (Iowa 1975). When a stop is challenged on the basis that reasonable cause did not exist, the State must show that the stopping officer had "specific and articulable cause to support a *reasonable belief* that criminal activity *may* have occurred." *State v. Aschenbrenner*, 289

N.W.2d 618, 619 (Iowa 1980) (emphasis added). Circumstances giving rise to suspicion or curiosity will not suffice. *State v. Dixon*, 241 N.W.2d 21, 23 ([Iowa] 1976). The officer is bound by the true reason or reasons for making the stop; that is, the officer may not rely on reasons that he or she could have had but did not actually have. *Aschenbrenner*, 289 N.W.2d at 619. If the State fails to meet its burden, the evidence obtained as a result of the stop must be suppressed. *State v. Reese*, 259 N.W.2d 793, 796 (Iowa 1977).

*Id.* at 51; *accord State v. Stevens*, 394 N.W.2d 388, 391 (Iowa 1986). Other courts agree that reasonable cause, not probable cause, is the test to be applied in cases like this. *See Marben v. State Department of Public Safety*, 294 N.W.2d 697, 699 (Minn. 1980); *People v. Ingle*, 36 N.Y.2d 413, 420, 330 N.E.2d 39, 44, 369 N.Y.S.2d 67, 74 (1975); *State v. Anderson*, 359 N.W.2d 887, 889 (S.D.1984).

■ The evidence presented to the agency and now before us in this judicial review proceeding satisfied each of the conditions for test result revocation provided by section 321B.16. The district court incorrectly applied a probable cause test in determining whether the department had authority to revoke the license. The decision of the agency must therefore be upheld as supported by substantial evidence in the record as a whole (Iowa Code § 17A.19(8)) unless the district court was correct in applying an exclusionary rule and refusing to consider the evidence the officer obtained by stopping Westendorf's automobile, including the results of chemical testing.

III. *Applicability of the Exclusionary Rule.*

■ The district court held that the initial stop of Westendorf was unlawful and, without explicitly mentioning an exclusionary rule, refused to consider the chemical tests which resulted from the stop. The district court apparently concluded that the exclusionary rule formulated under the fourth and fourteenth amendments to the

United States Constitution extends to the use of evidence in a civil case as well as in criminal proceedings. We refuse to extend that far the reach of that court-made rule.

The essence of the exclusionary rule is that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561, 571 (1974). The rule is designed to prevent future unlawful police conduct—"to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669, 1677 (1960). The Court has made clear, however, that the rule

> has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons. As with any remedial device, the application of the rule has been restricted to those areas where remedial objectives are thought most efficaciously served.

*Calandra*, 414 U.S. at 347, 94 S.Ct. at 620, 38 L.Ed.2d at 571. While the exclusionary rule applies in criminal prosecutions for driving while intoxicated, *State v. Aschenbrenner*, 289 N.W.2d 618, 619 (Iowa 1980), we have not previously addressed the question whether it applies in civil license revocation proceedings which, though "arising from the same incident," are nevertheless "separate and distinct." *Heidemann v. Sweitzer*, 375 N.W.2d 665, 668 (Iowa 1985).

The United States Supreme Court refused to extend the exclusionary rule to a federal deportation case, a civil proceeding, in *Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). That precedent forcefully urged upon us by the department has its roots in *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), where the Court emphatically stated it "never has applied [the exclusionary rule] to exclude evidence from a civil proceeding, federal or state." *Id.* at 447, 96 S.Ct. at 3029, 49 L.Ed.2d at 1057.

Other courts have found the exclusionary rule inapplicable in a variety of proceedings that are civil rather than criminal in nature. *See Patel v. Immigration & Naturalization Service*, 790 F.2d 720, 721 (8th Cir. 1986) (deportation case; exclusionary rule inapplicable); *Pullin v. Louisiana State Racing Commission*, 484 So.2d 105, 108 (La.1986) (exclusionary rule inapplicable in civil proceedings before state racing commission); *Delguidice v. New Jersey Racing Commission*, 100 N.J. 79, 92, 494 A.2d 1007, 1013 (1985) (allowing use of evidence illegally obtained by law enforcement personnel in proceedings before racing commission involving revocation of a jockey's license); *Deshields v. Chester Upland School District*, 95 Pa.Commw.Ct. 414, 505 A.2d 1080, 1083 (1986) (exclusionary rule inapplicable in school custodian's termination hearing).

We apply the cost-benefit framework delineated in *Lopez-Mendoza,* balancing the potential benefit of excluding unlawfully seized evidence against the resulting cost to societal interests. *See Lopez-Mendoza,* 468 U.S. at 1041, 104 S.Ct. at 3486, 82 L.Ed.2d at 787; *Kain v. State*, 378 N.W.2d 900, 901–02 (Iowa 1985) (exclusionary rule held inapplicable in probation revocation hearing). The imposition of an exclusionary sanction in this license revocation proceeding would have little force as a deterrent of unlawful police action because the department does not control the actions of local police officers. *See Delguidice,* 100 N.J. at 87–88, 494 A.2d at 1011; *Deshields,* 95 Pa.Commw.Ct. 414, 505 A.2d at 1083. If application of the rule does deter police officers from engaging in unlawful conduct, its use in criminal proceedings should be sufficient to accomplish that purpose. *See Lopez-Mendoza,* 468 U.S. at 1042–43, 104 S.Ct. at 3486, 82 L.Ed.2d at 788; *Janis,* 428 U.S. at 448, 96 S.Ct. at 3029, 49 L.Ed.2d at 1057.

Balanced against the improbable deterrent effect of applying the exclusionary rule in license revocation proceedings is its potential cost—the loss of reliable and relevant proof that licensed operators have driven while intoxicated. We have previously emphasized the high priority our legislature has given to enforcement of laws prohibiting drunk driving. *See Veach v. Iowa Department of Transportation,* 374 N.W.2d 248, 250 (Iowa 1985) ("The State has a strong interest in obtaining the best available evidence of the amount of alcohol in a driver's bloodstream at the time of arrest.").

The benefit of using reliable information of intoxication in license revocation proceedings, even when that evidence is inadmissible in criminal proceedings, outweighs the possible benefit of applying the exclusionary rule to deter unlawful conduct. Consequently, the exclusionary rule formulated under the fourth and fourteenth amendments was inapplicable in this license revocation proceeding.

The district court in this judicial review proceeding should have taken into consideration all of the evidence presented at the contested case hearing before the agency. When that evidence is considered, it is clear that Westendorf did not satisfy his burden to show compliance with all lawful requirements for the retention of his license, and therefore his license was correctly revoked by the department. *See Heideman v. Sweitzer,* 375 N.W.2d at 670; *McCrea v. Iowa Department of Transportation,* 336 N.W.2d 427, 428–29 (Iowa 1983).

REVERSED.