George RICHE, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. 80861.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1999.

Rehearing Denied March 23, 1999.

Bruce B. Brown, Kearney, for Appellant.

Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Respondent.

ANN K. COVINGTON, Judge.

The Director of Revenue suspended the driver's license of appellant George Riche pursuant to section 302.505, RSMo (Supp. 1997). On direct appeal to this Court, Riche challenges the constitutionality of subsection 1 of section 302.505, which provides for administrative driver's license suspension and

revocation for driving while intoxicated. Affirmed.

While driving west on Highway 116 in Clinton County, a Missouri Highway Patrol trooper twice observed a vehicle ahead of him cross over the fog line, the white line that demarcates the shoulder from the road. The trooper stopped the vehicle and approached the driver. The trooper smelled an odor of alcohol on the breath of the driver, Riche. The trooper observed that Riche's eyes were bloodshot and that his movements were slow and deliberate. The trooper asked Riche to perform several field sobriety tests, the results of which indicated that Riche was intoxicated. The trooper arrested Riche for driving while intoxicated and took him into custody. At the police station, Riche consented to a breath test. The breath test revealed that Riche had a blood alcohol concentration of .10%.

The director suspended Riche's driver's license pursuant to section 302.505.1. At a trial de novo before the circuit court, Riche challenged the suspension on the grounds that section 302.505.1 is unconstitutional. The circuit court found that the trooper did not have probable cause to stop Riche's vehicle, but concluded that the evidence gathered after the stop established probable cause to arrest Riche. The circuit court rejected Riche's constitutional challenges and upheld the suspension of Riche's driving privileges. Riche appeals.

At issue is the validity of section 302.505.1, which provides:

The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was ten-hundredths of one percent or more by weight, based on the definition of alcohol concentration in section 302.500, or where such person was less than twenty-one years of age when stopped and was stopped upon probable cause to believe such person was "driving

while intoxicated" in violation of section 577.010, RSMo, or "driving with excessive blood alcohol content" in violation of section 577.012, RSMo, or upon probable cause to believe such person violated a state, county or municipal traffic offense and such person was driving with a blood alcohol content of two-hundredths of one percent or more by weight.

■ Seeking to have this Court rule that the circuit court should have applied the exclusionary rule to exclude evidence of intoxication gathered after the initial stop, Riche claims that the omission of a requirement for probable cause or reasonable suspicion to stop from section 302.505.1 implicitly violates the federal and Missouri constitutional provisions prohibiting unlawful searches and seizures. U.S. Const. Amends. IV and XIV; Mo. Const. art. I, sec. 15.[1] Riche contends that, even though section 302.505.1 does not require a "probable or reasonable cause to stop" for drivers over twenty-one years of age, this Court should impose such a requirement.

■ It is well-established that the exclusionary rule requires that evidence obtained in violation of the fourth amendment cannot be used in a criminal proceeding against the victim of an illegal search and seizure. *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The exclusionary rule was designed to deter unlawful police conduct. *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The rule applies in criminal prosecutions for driving while intoxicated. *See State v. Miller*, 894 S.W.2d 649, 654 (Mo. banc 1995).

Whether the exclusionary rule applies in Missouri administrative driver's license revocation and suspension proceedings is an issue of first impression for this Court. Similar issues, however, have been raised in other civil proceedings. For example, in *In re Littleton*, 719 S.W.2d 772, 775 n. 2 (Mo. banc 1986), this Court refused to apply the exclusionary rule in an attorney discipline pro-

---

1. The fourth amendment provides the same guarantees against unreasonable searches and seizures as article I, section 15 of the Missouri Constitution. *State v. Damask*, 936 S.W.2d 565, 570 (Mo. banc 1996).

ceeding. Similarly, in *State ex rel. Peach v. Boykins*, 779 S.W.2d 236, 237 (Mo. banc 1989), this Court held that the exclusionary rule did not apply in an ouster proceeding.

Each of the three districts of the Missouri Court of Appeals has addressed the question of whether the exclusionary rule applies in driver's license suspension and revocation proceedings under section 302.505. Each has held that the exclusionary rule does not apply. *Gordon v. Director of Revenue*, 896 S.W.2d 737, 740 (Mo.App.1995); *Sullins v. Director of Revenue*, 893 S.W.2d 848, 850 (Mo.App.1995); *Green v. Director of Revenue*, 745 S.W.2d 818, 821 (Mo.App.1988).

Although some other jurisdictions have applied the exclusionary rule to administrative license revocation and suspension proceedings,[2] a number of jurisdictions having statutory schemes similar to Missouri's have held that the exclusionary rule does not apply in administrative proceedings to suspend or revoke a driver's license. *See, e.g., Powell v. Secretary of State*, 614 A.2d 1303 (Me.1992); *Westendorf v. Iowa Dept. of Transp., Motor Vehicle Div.*, 400 N.W.2d 553 (Iowa 1987); *Holte v. State Highway Com'r*, 436 N.W.2d 250 (N.D.1989).

■ The United States Supreme Court has repeatedly held that the use of evidence obtained in violation of the fourth amendment does not violate the Constitution. *Pennsylvania Bd. of Probation v. Scott*, 524 U.S. 357, 118 S.Ct. 2014, 2019, 141 L.Ed.2d 344 (1998). See, *e.g., United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Stone v. Powell*, 428 U.S. 465, 482, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The exclusionary rule is a judicially created means of deterring illegal searches and seizures. *Scott*, 524 U.S. 357, 118 S.Ct. at 2019. As such, the rule does not "proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *Stone*, 96 S.Ct. 3037, 428 U.S. at 486.

Instead, the exclusionary rule applies only in contexts "where its remedial objectives are thought most efficaciously served." *Calandra*, 94 S.Ct. 613, 414 U.S. at 348.

■ Because the exclusionary rule is prudential rather than constitutionally mandated, it will not be applied where its "substantial social costs" outweigh its deterrent benefits. *Scott*, 524 U.S. 357, 118 S.Ct. at 2019, quoting *Leon*, 468 U.S. at 907, 104 S.Ct. 3405. For example, the Court has refused to extend the exclusionary rule to parole revocation hearings, *Scott*, 524 U.S. 357, 118 S.Ct. at 2019, federal deportation cases, *Immigration & Naturalization Serv. v. Lopez–Mendoza*, 468 U.S. 1032, 1035, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), and federal grand jury proceedings, *Calandra*, 94 S.Ct. 613, 414 U.S. at 348. In each case, the Court determined that the potential benefit of applying the exclusionary rule was outweighed by the resulting cost to societal interests.

When this Court applies the cost-benefit analysis in the context of section 302.505 proceedings, it becomes clear that applying the exclusionary rule would impose significant costs to society. Extending the exclusionary rule to section 302.505 proceedings would unnecessarily complicate and burden an administrative process designed to remove drunken drivers from Missouri's roads and highways as quickly as possible. *See Scott*, 524 U.S. 357, 118 S.Ct. at 2020–21; *Powell*, 614 A.2d at 1307. In addition, application of the exclusionary rule would preclude consideration of probative, reliable evidence and would allow many drivers to remain on the road who would otherwise lose their licenses. *See Scott*, 118 S.Ct. at 2020; *Westendorf*, 400 N.W.2d at 557.

Although the costs to societal interests have been determined to be worth bearing in criminal prosecutions, the deterrent benefits

---

**2.** See, e.g. *People v. Krueger*, 208 Ill.App.3d 897, 153 Ill.Dec. 759, 567 N.E.2d 717 (1991) (holding license was improperly suspended because police lacked probable cause for arrest in defendant's home); *Pooler v. Motor Vehicles Div.*, 306 Or. 47, 755 P.2d 701 (1988) (excluding evidence garnered from an unlawful stop); *Whisenhunt v. Dept. of Pub. Safety*, 746 P.2d 1298 (Alaska 1987)

(exclusionary rule applied where defendant was denied right to counsel). The exclusionary rule was applied without reasoning in *People v. Decker*, 181 Ill.App.3d 427, 130 Ill.Dec. 319, 537 N.E.2d 386 (1989); *People v. Collins*, 154 Ill. App.3d 149, 107 Ill.Dec. 72, 506 N.E.2d 963 (1987); *Olson v. Com'r of Pub. Safety*, 371 N.W.2d 552 (Minn.1985).

of applying the exclusionary rule in section 302.505 proceedings do not outweigh the burdens. Imposing the exclusionary rule in civil license revocation and suspension proceedings would have little force in deterring unlawful police action, because the director of revenue has no control over the actions of local police officers. *See Westendorf*, 400 N.W.2d at 557. Assuming that application of the exclusionary rule deters illegal searches, its use in criminal proceedings should serve to deter unlawful police action. Minimal additional deterrence to that which obtains in a criminal proceeding is gained by applying the exclusionary rule in administrative proceedings. *See Scott*, 524 U.S. 357, 118 S.Ct. at 2019–20; *Westendorf*, 400 N.W.2d at 557; *Powell*, 614 A.2d at 1306–7. In sum, any incremental deterrent effect that might be achieved by extending the rule to section 302.505 proceedings is uncertain at best, *see Calandra*, 414 U.S. at 351, 94 S.Ct. 613, and is outweighed by the benefit of using reliable evidence of blood alcohol content in license revocation and suspension proceedings even when that evidence is inadmissible in criminal proceedings.

Riche contends that a section 302.505 proceeding is a "quasi-criminal," rather than civil, proceeding. Riche relies on *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, 380 U.S. 693, 700–02, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), a forfeiture case. In *One 1958 Plymouth*, the police searched the defendant's vehicle without probable cause and found several cases of alcohol that did not bear the appropriate tax seals. Police arrested the defendant and charged him with a criminal offense against Pennsylvania's liquor laws. Pursuant to a Pennsylvania statute that provided for the forfeiture of vehicles used in the illegal transportation of alcohol, the Commonwealth petitioned for forfeiture of the automobile. Finding that the forfeiture proceeding was intended to punish for violation of the liquor law, the United States Supreme Court applied the exclusionary rule to the forfeiture proceeding. *Id.* at 702, 85 S.Ct. 1246.

■ The reasoning of *One 1958 Plymouth* does not apply to the instant case. In *One 1958 Plymouth*, the purpose of the Pennsyl-

vania forfeiture statute was to augment the criminal punishment of fines. *See id.* at 701, 85 S.Ct. 1246. In fact, Pennsylvania case law recognized that property forfeitures under the liquor law constituted punishment. *Id.*, citing *Commonwealth v. One 1959 Chevrolet Impala*, 201 Pa.Super. 145, 191 A.2d 717, 719 (1963). The purpose of Missouri's suspension and revocation proceeding as set forth in section 302.505 is entirely distinct from criminal punishment of drunken drivers. *Tolen v. Missouri Dep't of Revenue*, 564 S.W.2d 601, 602 (Mo.App.1978); *State v. Byerly*, 522 S.W.2d 18, 20 (Mo.App.1975). Unlike the punitive forfeiture proceeding in *One 1958 Plymouth*, section 302.505 is designed to protect the public by quickly removing drunken drivers from Missouri's roads and highways. *State v. Mayo; Becker v. Director of Revenue*, 915 S.W.2d 758, 762 (Mo. banc 1996); *Byerly*, 522 S.W.2d at 20; *Hatfield v. Director of Revenue*, 907 S.W.2d 207, 210 (Mo. App.1995). Riche's contention is without merit.

■ Riche contends in the alternative that his case is controlled by this Court's decision in *Aron v. Director of Revenue*, 737 S.W.2d 718 (Mo. banc 1987). In *Aron*, the trial court found that there was no probable cause for the arrest of the driver and ordered the driver's license reinstated. This Court reversed the decision of the trial court, holding that "the specific probable cause to arrest for an alcohol-related traffic violation and in turn to support an administrative license suspension may be developed after a motorist is otherwise properly stopped." *Id.* at 719.

Although the *Aron* decision correctly recognized that section 302.505.1 requires that the arresting officer must have probable cause to believe that the driver was intoxicated, the *Aron* court's use of the phrase "properly stopped" implied that the requirement of probable cause extended to the initial stop of the driver. *Lasley v. Director of Revenue*, 954 S.W.2d 327, 332 (Mo. banc 1997) (Limbaugh, J., concurring). Consequently, a number of appellate decisions cite *Aron* for the proposition that a license revocation must be based on a lawful stop. *See, e.g., Cook v. Director of Revenue*, 890 S.W.2d 738, 739–40 (Mo.App.1995); *Wallace v. Director of Reve-*

*nue,* 786 S.W.2d 893 (Mo.App.1990); *Stark v. Director of Revenue,* 774 S.W.2d 842, 843 (Mo.App.1989); *Edwards v. Director of Revenue,* 769 S.W.2d 483, 484 (Mo.App.1989).

*Aron* and the cases following it misrepresent section 302.505.1. As set forth above, neither section 302.505.1 nor the constitutional provisions upon which Riche relies require that the arresting officer's initial stop be based upon probable cause. To the extent that *Aron* and its progeny impose a probable cause requirement on the initial stop and apply the exclusionary rule in section 302.505 proceedings, they are overruled.

As reasoned above, the costs of excluding unlawfully seized evidence in a proceeding pursuant to section 302.505 outweigh the potential benefits of applying the exclusionary rule. Neither the fourth amendment nor the Missouri Constitution requires that the exclusionary rule be applied to proceedings under section 302.505; nor does either obligate this Court to impose the "probable or reasonable cause to stop" requirement proposed by Riche. Riche's challenges to section 302.505.1 under the fourth amendment and article I, sec. 15 are without merit.

■■■ Riche also contends that section 302.505.1 violates his right to equal protection under the law, as guaranteed by the United States and Missouri constitutions. U.S. Const. Amend. XIV; Mo. Const. art. I, sec. 2. His challenge focuses on the portion of section 302.505.1 that imposes standards for drivers under the age of twenty-one who drive under the influence of alcohol different from those for drivers over the age of twenty one. A blood alcohol content of .02% is sufficient to suspend or revoke the license of a driver under the age of twenty-one, while the statute requires the director to prove a blood alcohol content of .10% or higher for the suspension or revocation of the license of a driver over age twenty-one. If the driver is under twenty-one years of age, the director must prove that the driver was stopped upon probable cause. As to drivers

over age 21, such as Riche, the director must prove that the driver was arrested upon probable cause.

■■■ In analyzing equal protection claims, this Court first must determine whether the alleged classification burdens a "suspect class" or impinges upon a "fundamental right." *Casualty Reciprocal Exch. v. Missouri Employers Mut. Exch.,* 956 S.W.2d 249, 256 (Mo.1997). "Suspect classes" are classes, such as those based upon race, national origin, or illegitimacy that for historical reasons "command extraordinary protection from the majoritarian political process." *Id.* (quoting *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976)).[3] "Fundamental rights" include the rights to free speech, to vote, to freedom of interstate travel, as well as other basic liberties. *Mahoney v. Doerhoff Surgical Serv., Inc.,* 807 S.W.2d 503, 512 (Mo. banc 1991) (citing *Kramer v. Union Free Sch. Dist.,* 395 U.S. 621, 626, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583 (1969)).

■■■ Riche initially contends that section 302.505.1 impinges upon the "fundamental right" to be free from unlawful searches and seizures by "granting or withholding fourth amendment protections based upon age." Riche mischaracterizes the statute. Section 302.505.1 provides for the suspension and revocation of driver's licenses. There is no fundamental right to a driver's license. *Stewart v. Director of Revenue,* 702 S.W.2d 472, 475 (Mo. banc 1986). Section 302.505.1 does not "withhold fourth amendment protections;" rather, it establishes the standards for withholding driving privileges from those drivers "who are most likely to be unable to operate an automobile safely due to excessive intoxication." *Id.* at 475. In setting the standards in section 302.505.1, the legislature has chosen to require that the director prove probable cause for the stop of drivers under twenty-one and probable cause for the arrest of drivers over twenty-one.

---

**3.** Appellant does not contend that age-based classifications burden a suspect class. Even if he had, however, his contention would fail. Both this Court and the United States Supreme Court have declined to extend heightened equal protec-tion review to differential treatment based on age. *See State v. Blankenship,* 830 S.W.2d 1, 16 (Mo. banc 1992); *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985).

Since section 302.505.1 does not burden a suspect class or impinge upon a fundamental right, this Court considers whether the statute is rationally related to a legitimate state purpose. *Mahoney*, 807 S.W.2d at 512; see also *Blue Cross Hosp. Serv., Inc. v. Frappier*, 681 S.W.2d 925, 930 (Mo. banc 1984),*vacated and remanded*, 472 U.S. 1014, 105 S.Ct. 3471, 87 L.Ed.2d 608(1985),*readopted as published*, 698 S.W.2d 326 (Mo. banc 1985). Under this analysis, a court will strike down the legislation only if the challenger shows that "the classification rests on grounds wholly irrelevant to the achievement of the state's objective." *Mahoney*, 807 S.W.2d at 512.

Riche does not deny that section 302.505.1 serves the state's legitimate interest in suspending or revoking drivers' licenses "to prevent the slaughter on our highways which might occur if intoxicated persons were permitted to drive." *Collins v. Director of Revenue*, 691 S.W.2d 246, 250 (Mo. banc 1985). Nor does Riche contend that the legislature may not legitimately create unequal classifications based upon age with regard to the blood alcohol level sufficient to revoke or suspend a driver's license. His challenge is limited to the probable cause element of section 302.505.1. He contends that there is no rational basis for treating drivers disparately based upon age when "such unequal treatment involves the grounds for stopping the driver."

Riche's argument has no merit. The legislature has imposed a more stringent blood alcohol content standard for the suspension or revocation of licenses of drivers under age twenty-one. For the legislature to confer additional safeguards to those same drivers is rational.

The judgment is affirmed.

All Concur.