APPEL, Justice (dissenting).
I respectfully dissent. The majority opinion in its very first paragraph starts *767 out on the wrong foot when it declares that the question in this case is whether we are going to reverse direction in light of Fourth Amendment precedent. But that is not the question at all. The question is whether Fourth Amendment precedent is sufficiently well-reasoned for us to follow the Fourth Amendment approach under Iowa constitutional law.
Article I, section 8 of the Iowa Constitution provides,
The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized.
Iowa Const. art. I, § 8. This provision of the Iowa Constitution is perhaps the most important provision of our Bill of Rights protecting Iowans from an authoritarian state. Early cases emphasized its protean character. Modern pragmatic revisionists have sought, however, to dilute the strength of search and seizure protections and to expand the scope of state authority to search and seize. While in recent years we have resisted such revisions, the majority opinion in this case is a step in the wrong direction. Here is why.
I. As an Integral Part of our State Constitution's Protection Against Unlawful Search and Seizures, the Exclusionary Rule Applies in Driver's License Revocation Cases.
A. Constitutional Footing of Exclusionary Rule. First, we have rightly held that the exclusionary rule for evidence seized in violation of article I, section 8 is "an integral part of [the] state constitution's protection against unreasonable searches and seizures." State v. Cline , 617 N.W.2d 277, 285 (Iowa 2000), abrogated on other grounds by State v. Turner , 630 N.W.2d 601, 606 n.2 (Iowa 2001). In Iowa, then, the exclusionary rule is substantive constitutional doctrine.
There is substantial support for the holding in Cline that the exclusionary rule is an integral part of substantive constitutional doctrine in Iowa law. In Reifsnyder v. Lee , 44 Iowa 101, 102 (1876), we explained in a civil forfeiture proceeding that a party subject to an illegal search should be restored to the party's position prior to the search. The notion in Reifsnyder is that a party is entitled to a restorative remedy of being returned to the party's position prior to the constitutional violation. See id. Later, in State v. Height , 117 Iowa 650, 661, 91 N.W. 935, 938 (1902), we noted that the search and seizure principles were subject to "a broad and liberal interpretation for the purpose of preserving the spirit of constitutional liberty." Finally, in State v. Sheridan , 121 Iowa 164, 168, 96 N.W. 730, 731 (1903), the court declared that to use illegally seized evidence to secure a conviction would "emasculate the constitutional guaranty, and deprive it of all beneficial force or effect in preventing unreasonable searches and seizures."[3]
For decades, there was a similar approach under the Fourth Amendment. In Weeks v. United States , 232 U.S. 383, 398, 34 S. Ct. 341, 346, 58 L.Ed. 652 (1914), *768 overruled in part by Mapp v. Ohio , 367 U.S. 643, 645-55, 81 S. Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961), the Supreme Court unanimously held that private papers obtained through an unconstitutional search could not be used in a criminal prosecution. In Weeks , Justice Day emphasized that the Fourth Amendment imposed on judges as well as executive officials "limitations and restraints as to the exercise of [their] power and authority." Id. at 392, 34 S. Ct. at 344. Further, Justice Day declared that the limitations and restraints "forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of law." Id. Justice Day further emphasized that the fruits of illegal searches "should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution." Id.
As scholars have pointed out, the language of Weeks makes clear that the Fourth Amendment imposes obligations on judges, that they have a duty to give full force and effect to the rights secured by the Amendment for both innocent and guilty persons, and that the tendency of officials to violate the Fourth Amendment should find no approval in the courts. See Tracey Maclin, The Supreme Court and the Fourth Amendment's Exclusionary Rule 11-12 (2013); Thomas K. Clancy, The Fourth Amendment's Exclusionary Rule as a Constitutional Right , 10 Ohio St. J. Crim. L. 357, 358-59 (2013).
Similarly, in Silverthorne Lumber Co. v. United States , 251 U.S. 385, 392, 40 S. Ct. 182, 183, 64 L.Ed. 319 (1920), Justice Oliver Wendell Holmes declared in strong, unequivocal language,
The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.
Holmes thus believed not only that courts should not be tainted with unconstitutionally obtained evidence, but that it should not be used for any purpose.
And in Mapp , 367 U.S. at 649, 81 S. Ct. at 1688, the Supreme Court emphasized the constitutional nature of the exclusionary rule. According to Mapp , the exclusion of evidence under search and seizure law was a rule "of constitutional origin." Id. ; see also Cline , 617 N.W.2d at 284. Further, the Mapp Court emphasized that its decision "gives to the individual no more than that which the Constitution guarantees him." 367 U.S. at 660, 81 S. Ct. at 1694.
By declaring the exclusionary rule as part of the substance of article I, section 8, we have squarely and firmly rejected the unfortunate innovations of search and seizure doctrine introduced to the Fourth Amendment by the United States Supreme Court in United States v. Calandra , 414 U.S. 338, 348, 94 S. Ct. 613, 620, 38 L.Ed.2d 561 (1974). In Calandra , the Supreme Court, inconsistent with decades of past federal precedent, downgraded Fourth Amendment protections by declaring that the exclusionary rule was merely "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect ..., rather than a personal constitutional right of the party aggrieved." Id. As noted by one commentator, by emphasizing the deterrence function exclusively, the Supreme Court's approach "generates an enormous pressure for reduction of the scope of the rule" through cost-benefit type of analysis. See James Boyd White, Forgotten Points in the "Exclusionary Rule" Debate , 81 Mich. L. Rev. 1273, 1281 (1983).
By describing the exclusionary rule as a substantive part of our constitutional protections in Cline , we recognized that constitutional *769 cement protected it from being washed away based on transient pragmatic concerns that cannot be permitted to overrun our permanent constitutional regime. 617 N.W.2d at 285. Our approach is consistent with other courts. See, e.g. , Dorsey v. State , 761 A.2d 807, 818 (Del. 2000) ("[T]he efficient prosecution of criminals cannot justify a deliberate invasion of the right of the citizen to be made secure against the violation of specific constitutional guarantee's ....") (quoting Rickards v. State , 77 A.2d 199, 205 (Del. 1950) ); State v. Guzman , 122 Idaho 981, 842 P.2d 660, 672 (1992) (explaining that the exclusionary rule is a constitutionally mandated remedy for illegal searches and seizures); State v. Eserjose , 171 Wash.2d 907, 259 P.3d 172, 178 (2011) (en banc) (noting that state exclusionary rule accomplishes " 'its paramount concern [of] protecting an individual's right of privacy' ... by closing the courtroom door to evidence gathered through illegal means" (quoting State v. Afana , 169 Wash.2d 169, 233 P.3d 879, 884 (2010) (en banc))).
B. The Exclusionary Rule in Iowa is a Personal Remedy. Second, the exclusionary rule in Iowa has long been held to provide a remedy for a constitutional violation. In Reifsnyder , we emphasized that under our search and seizure law, the parties should be returned to the position they were before the unconstitutional conduct. 44 Iowa at 102. In Cline , we emphasized that the exclusionary rule was a remedy for a constitutional violation. 617 N.W.2d at 289. We emphatically rejected the notion in United States v. Leon , 468 U.S. 897, 906, 104 S. Ct. 3405, 3412, 82 L.Ed.2d 677 (1984) (quoting Calandra , 414 U.S. at 348, 94 S. Ct. at 620 ), that the exclusionary rule was merely "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right." Cline , 617 N.W.2d at 289.
The notion that article I, section 8 vests personal rights, of course, is also clear by the language of the provision: "The right of the people to be secure in their persons, houses, papers and effects, ...." Iowa Const. art. I, § 8 ; see Morgan Cloud, A Conservative House United: How the Post-Warren Court Dismantled the Exclusionary Rule , 10 Ohio St. J. Crim. L. 477, 480 (2013).
C. The Exclusionary Rule in Iowa Protects the Integrity of the Judiciary. Third, we have emphasized, among other things, that the exclusionary rule is supported by the need to protect the integrity of the judiciary from using unlawfully obtained evidence to support its judgments. In Cline , we noted, "Judges would become accomplices to the unconstitutional conduct of the executive branch if they allowed law enforcement to enjoy the benefits of the illegality." 617 N.W.2d at 290. In State v. Hamilton , 335 N.W.2d 154, 158 (Iowa 1983), we emphasized that tainted evidence must be excluded because exclusion "protect[s] the integrity of the judiciary." Our approach in Cline thus had a solid pedigree in Iowa caselaw, but also in federal caselaw prior to reconstruction of Fourth Amendment doctrine that occurred in Calandra . See, e.g. , Elkins v. United States , 364 U.S. 206, 222, 80 S. Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960) (referring to the "imperative of judicial integrity"); Weeks , 232 U.S. at 392, 34 S. Ct. at 344 ; see also Robert M. Bloom & David H. Fentin, "A More Majestic Conception": The Importance of Judicial Integrity in Preserving the Exclusionary Rule , 13 U. Pa. J. Const. L. 47, 47 (2010) ; Andrew E. Taslitz, Hypocrisy, Corruption, and Illegitimacy: Why Judicial Integrity Justifies the Exclusionary Rule , 10 Ohio St. J. Crim. L. 419, 474 (2013).
This case involves action of an administrative agency. Of course, Holmes has the *770 answer to whether illegally obtained evidence may be used in this kind of proceeding: No! Silverthorne Lumber , 251 U.S. at 392, 40 S. Ct. at 183. In any event, even if this case involves a decision by an administrative agency in the first instance, there is a right of appeal to the courts arising out of final agency action. The need to maintain the integrity of the courts by refusing to consider unconstitutionally obtained evidence therefore applies in this case.
D. Inapplicability of Westendorf . In support of its position, the State cites Westendorf v. Iowa Department of Transportation , 400 N.W.2d 553 (Iowa 1987), superseded by statute as recognized by Brownsberger v. Department of Transportation , 460 N.W.2d 449, 450-51 (Iowa 1990). Westendorf , however, involved a challenge under the Fourth Amendment and not under the Iowa Constitution. Id. at 556. As a result, the Westendorf court was bound to follow the diluted post- Calandra federal precedents. See id. at 556-57. In striking contrast to Cline , the Westendorf court did not treat the exclusionary rule as part and parcel of the Fourth Amendment, did not regard the search and seizure provisions as providing a personal remedy, and did not cite judicial integrity as an important concern.[4] See id.
The method of Fourth Amendment analysis in Westendorf is completely different from the analysis of article I, section 8 under Cline . In Cline , we drew upon traditional approaches, while Westendorf relied on recent policy-driven innovations in interpretation of the Fourth Amendment by the United States Supreme Court.
E. Application of Exclusionary Rule in Civil Contexts. As noted by Professor LaFave, courts have often applied the exclusionary rule for search and seizure violations in administrative settings. According to LaFave,
Courts have held or at least assumed that the exclusionary rule is applicable in a wide variety of administrative proceedings, including FTC hearings to uncover discriminatory pricing practices, SEC proceedings, OSHA proceedings, proceedings before the public utilities commission to terminate phone service because of illegal use, NLRB hearings concerning labor controversies, immigration hearings, hearings to terminate a public employee's government service, hearings to suspend or revoke a license to practice a profession or to sell liquor, hearings to suspend or revoke a driver's license , and hearings to suspend or expel a student from a public high school or a state university.
1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.7(f), at 335-36 (5th ed. 2012) (emphasis added) (footnotes omitted).
It is not surprising that a number of courts have applied the exclusionary rule in driver's license settings. For instance, in State v. Lussier , the Supreme Court of *771 Vermont stated in a driver's license context,
Evidence obtained as the result of constitutional violations by law enforcement officers may not be admitted at trial as a matter of state law because doing so "eviscerates our most sacred rights, impinges on individual privacy, perverts our judicial process, distorts any notion of fairness, and encourages official misconduct."
171 Vt. 19, 757 A.2d 1017, 1025 (2000) (quoting State v. Badger , 141 Vt. 430, 450 A.2d 336, 349 (1982) ). The Vermont court upheld exclusion "to protect the core value of privacy" reflected in the search and seizure provisions of the Vermont Constitution. Id. at 1026-27.
In addition, the Vermont court emphasized the need "to promote the public's trust in the judicial system." Id. Further, the Vermont court emphasized that the focus of any analysis "should be on the individual constitutional rights at stake." Id. at 1025. These observations are consistent with the approach taken by this court in Cline under article I, section 8 of the Iowa Constitution.
Similarly, in Williams v. Ohio Bureau of Motor Vehicles , the Ohio court, noting that the exclusionary rule applied in civil forfeiture proceedings, held that a lawful arrest, including a constitutional stop, must take place before a refusal to submit to a test triggers a license suspension. 62 Ohio Misc.2d 741, 610 N.E.2d 1229, 1231 (Ohio Mun. Ct. 1992) ; see also Watford v. Ohio Bur. of Motor Vehicles , 110 Ohio App.3d 499, 674 N.E.2d 776, 778 (1996) ("[A] lawful arrest, including a constitutional stop, must take place before a refusal to submit to chemical tests ... triggers a license suspension."). In People v. Krueger , 208 Ill.App.3d 897, 153 Ill.Dec. 759, 567 N.E.2d 717, 722 (1991), the Illinois appellate court noted that "a suspension may not be predicated on the fruits of unconstitutional police activity." Although the Illinois court rested its decision on statutory interpretation, the court's interpretation was powered by constitutional concerns. Id. ; see also Whisenhunt v. State Dep't of Pub. Safety , 746 P.2d 1298, 1298 (Alaska 1987) (analyzing rationale for exclusion in statutory context); Pooler v. Motor Vehicles Div. , 306 Or. 47, 755 P.2d 701, 703-04 (1988) (en banc) (same).
There is, of course, contrary authority in other states as well. Unlike the case in Iowa, many of these jurisdictions have adopted the eviscerating approach of Calandra as part of their local jurisprudence. See, e.g. , Powell v. Sec'y of State , 614 A.2d 1303, 1307 (Me. 1992) (stating purpose of exclusionary rule was to deter police misconduct); Riche v. Dir. of Revenue , 987 S.W.2d 331, 333 (Mo. 1999) (en banc) (same). These cases do not embrace the Iowa view that the exclusionary rule is part of the substance of the constitutional provision, that it provides a remedy for the person subject to unconstitutional conduct, and that it protects the integrity of the courts.
F. Summary. Iowa search and seizure law under article I, section 8 of the Iowa Constitution has followed a materially different analytic underpinning than the recent innovations of the United States Supreme Court under the Fourth Amendment. In my view, the principles of our search and seizure law have application in the context of a driver's license revocation.
II. Constitutionality of Unauthorized Search by Government Agent Under Article I, Section 8 of the Iowa Constitution.
I now consider the key question in this case and the determinative question in the majority opinion, namely, whether an unauthorized search is an unconstitutional *772 search under article I, section 8 of the Iowa Constitution. This is a close issue. As the majority recognizes, the proposition has been embraced by a number of courts. See, e.g. , State v. Cuny , 257 Neb. 168, 595 N.W.2d 899, 903 (1999) (stating stop and detainment unlawful where officer had no statutory authority and requiring suppression of evidence in criminal proceeding under both Fourth Amendment and Nebraska Constitution); State v. Brown , 143 Ohio St.3d 444, 39 N.E.3d 496, 502 (2015) (noting that Ohio law is more protective than federal law and holding that stop without statutory authority violated search and seizure clause of Ohio Constitution); State v. Barker , 143 Wash.2d 915, 25 P.3d 423, 425-26 (2001) (en banc) (stating probable cause alone does not establish authority to arrest under Washington Constitution and requiring suppression of evidence); see also Commonwealth v. Hernandez , 456 Mass. 528, 924 N.E.2d 709, 712-13 (2010) (noting that Massachusetts, like Iowa, rejects the good-faith exception to the exclusionary rule). Other courts, however, have come to the opposite conclusion. See, e.g. , State v. Green , 158 Idaho 884, 354 P.3d 446, 449-51 (2015) (noting that similarity of language and purpose does not require the court to follow Fourth Amendment jurisprudence but finding it persuasive in this case); State v. Gates , 145 So. 3d 288, 304 (La. 2014) (stating that stop outside officer's jurisdiction does not require suppression of evidence); State v. Keller , 361 Or. 566, 396 P.3d 917, 925-26 (2017) (holding unauthorized stop does not give rise to constitutional violation under search and seizure provisions of Oregon Constitution under all the facts and circumstances of the case).
To me, the better view is that searches and seizures by government officials are unlawful unless government officials have authority to conduct them. As noted by the Washington Supreme Court in Barker , the search and seizure provision of the Washington Constitution "is not a source of authority of law to arrest or stop and detain a person in Washington. There must be some other source of authority of law for a constitutional warrantless arrest." 25 P.3d at 425. Here, there is no source of authority for the arrest. As a result, a constitutional violation under article I, section 8 of the Iowa Constitution is present and the evidence should be suppressed.
I close by noting the narrowness of the holding in this case. The holding in the majority opinion is that where a government official acting without authority executes a stop based on reasonable suspicion of intoxicated driving and administers DUI testing, the evidence may be admitted in a driver's license revocation proceeding without violating article I, section 8 of the Iowa Constitution.
Wiggins, J., joins this dissent.

To be sure, in State v. Tonn , 195 Iowa 94, 100-01, 191 N.W. 530, 533 (1923), the court, over strong dissent, abandoned the exclusionary rule in a search and seizure case. The approach in Tonn was, of course, rejected in Cline in favor of our earlier precedent. 617 N.W.2d at 291, 293.

In addition, Westendorf emphasized that there would be "little force as a deterrent of unlawful police action because the department does not control the actions of local police officers." 400 N.W.2d at 557. In this case, however, the unlawful stop was not made by the police, but by employees of the Iowa Department of Transportation, the very same agency seeking to revoke Westra's driver's license. As noted by LaFave, even based on Calandra , "the argument for exclusion is most compelling when the administrative agency in question has an investigative function and investigative personnel of that agency participated in the illegal activity for the purpose of providing information to support administrative proceedings against the suspect." 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.7(f), at 340 (5th ed. 2012). Thus, even under federal law, the precedential value of Westendorf is doubtful for the present case.