Mark Edward **MANDERS, Jr.,**
**Appellant,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION, Appellee.**

**No. 89–423.**

Supreme Court of Iowa.

April 18, 1990.

Joel W. Bittner and Robert P. Montgomery, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Charles J. Krogmeier, Sp. Asst. Atty. Gen., and Merrell M. Peters, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and NEUMAN, JJ.

CARTER, Justice.

Petitioner, Mark Edward Manders, Jr., appeals from an order on judicial review of

agency action which upheld the action of respondent, Iowa Department of Transportation, in revoking his license to operate a motor vehicle. The basis for the agency's action in revoking petitioner's license was his alleged refusal to submit to chemical testing of his blood alcohol content when requested to do so in violation of Iowa Code section 321J.9 (1987).

Petitioner's challenge to the revocation in the district court and on this appeal is based on the contentions that (1) his refusal to submit to chemical testing was justified because of the failure of law enforcement officers to cooperate in his efforts to contact an attorney, and (2) in any event, the officers lacked reasonable cause to stop his motor vehicle thus rendering any evidence obtained following that stop inadmissible. Petitioner's appeal was considered by the court of appeals which affirmed the judgment of the district court. We granted further review. Upon consideration of the issues presented, we affirm the decision of the court of appeals and the judgment of the district court.

Petitioner was arrested for OWI on November 21, 1987. At the police station, he initially consented to give a breath test but later indicated he wished to contact an attorney before this was done. There is a dispute in the record concerning the circumstances which followed. An officer present at the time testified at the administrative hearing that petitioner had been informed that in order to contact an attorney he would have to provide the name or telephone number and have the call initiated by jail authorities.

The officer further testified that petitioner insisted on dialing the call himself and refused to provide a name or telephone number. According to the officer, petitioner thereafter refused to submit to a breath test and asked to have a sample of blood tested. Later, when a blood test had been arranged, he also refused to submit to that test.

Petitioner disputes this version of what happened and testified that his request to contact an attorney was ignored. His refusal of chemical testing was, according to him, based on his desire to contact an attorney prior to making that decision. In resolving this factual dispute, the final agency decision found that the testimony of the police officer was credible and that petitioner's failure to consent to chemical testing constituted a refusal.

The agency rejected petitioner's claim concerning lack of reasonable cause for the investigatory stop of his motor vehicle. The final agency decision found on the facts that there had been reasonable cause and, in addition, concluded that, under our decision in *Westendorf v. Iowa Department of Transportation*, 400 N.W.2d 553 (Iowa 1987), it was immaterial whether reasonable cause existed because the evidence obtained following the stop would be admissible in the administrative proceeding notwithstanding a potential constitutional violation associated with the stop.

■ The agency decision was affirmed by the district court and the court of appeals. The decision of the court of appeals concluded that, under our holding in *Westendorf*, lack of probable cause to make an investigatory stop of a motor vehicle does not trigger an exclusionary rule prohibiting use of evidence thus obtained in an administrative proceeding. In this further review proceeding, the petitioner asserts that the court of appeals misinterpreted *Westendorf*.

Our reason for granting further review was to reconsider the scope of our *Westendorf* decision. We approve without discussion the court of appeals decision as to the other issues in the case concerning the circumstances of petitioner's request for an attorney and his refusal to be tested.

There are three factors which may have created some doubt on the part of the bench and bar concerning the effect of *Westendorf* on administrative proceedings. First, in spite of the presence of strong language in that case with respect to the benefit of using reliable information in these administrative proceedings, even where that evidence is inadmissible in a criminal prosecution, this language was perhaps not necessary for purposes of deciding that case. The case had to be re-

versed in any event on the ground that the district court erroneously applied a probable-cause standard rather than a reasonable-suspicion standard. Second, notwithstanding the strong language in *Westendorf*, both the court of appeals and this court have, in license revocation cases arising subsequent to *Westendorf*, continued to determine the constitutional validity of investigatory stops. *See, e.g., Benning v. Iowa Dep't of Transp.*, 441 N.W.2d 372 (Iowa 1989).

The third factor is that *Westendorf* spoke only to the matter of a constitutional exclusionary rule. It did not consider the possibility of a statutory exclusionary rule. In the present case, petitioner seeks to buttress his claim that there is a statutory exclusionary rule by reliance on Iowa Code section 321J.13(4) (1989), enacted subsequent to *Westendorf*. That statute provides:

> A person whose motor vehicle license or operating privilege has been or is being revoked under section 321J.9 or 321J.12 may reopen a department hearing on the revocation if the person submits a petition stating that new evidence has been discovered which provides grounds for rescission of the revocation, or prevail at the hearing to rescind the revocation, if the person submits a petition stating that a criminal action on a charge of a violation of section 321J.2 filed as a result of the same circumstances which resulted in the revocation has resulted in a decision in which the court has held that the peace officer did not have reasonable grounds to believe that a violation of section 321J.2 had occurred to support a request for or to administer a chemical test or which has held the chemical test to be otherwise inadmissible or invalid. Such a decision by the court is binding on the department and the department shall rescind the revocation.

*Id.*

Notwithstanding these three potential concerns, we conclude that the court of appeals was correct in applying *Westendorf* in accordance with its clear language. The portion of the *Westendorf* opinion dealing with the absence of an exclusionary rule in administrative proceedings of this type was not, in our view, dictum. The district court in that case had erred in applying a probable-cause standard rather than a reasonable-suspicion standard. If that were the dispositive issue, however, it would have then become necessary to determine whether the investigatory stop was valid under the correct constitutional standard. Instead, this court, without attempting to resolve the validity of the investigatory stop, held that under all of the evidence (including that obtained from the investigatory stop) the implied consent law had properly been invoked.

The fact that there have been license revocation cases subsequent to *Westendorf* in which the courts have continued to struggle with issues concerning the validity of investigatory stops is, in our opinion, explained by the adversary process and the procedure for reviewing administrative orders. An apparent inertia on the agency's part in continuing to recognize an exclusionary rule caused judicial review petitions to be addressed to that rule in order to review the case on the basis on which it was decided by the agency. The *Westendorf* decision is not sufficiently old, however, to have yet lost its vitality through disuse.

Finally, we consider whether there is a basis for applying a statutory exclusionary rule in administrative proceedings of this type. No language contained in the several statutes making up the implied consent law at the time the *Westendorf* case was decided suggests any basis for a statutory exclusionary rule in the administrative proceedings. Section 321J.13(4) enacted after *Westendorf* pertains to reopening proceedings before the agency in the limited situation in which an adjudication on the admissibility of evidence relevant to the implied consent law has been made in a criminal proceeding growing out of the same facts.

■ There is no indication in the present record of any adjudication in a criminal proceeding which would trigger the reopening provision of section 321J.13(4). Nor is there any indication in that statute that the

agency is to apply an exclusionary rule in deciding these cases initially. Because, on judicial review of contested case hearings under Iowa Code section 17A.19, this court may only decide whether the agency acted correctly, the rule of decision which applies to the agency also applies to the court which is reviewing the agency.

We have considered all arguments presented and conclude that both the district court and the court of appeals decided this case correctly. The judgments of those courts must be affirmed.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.