**Reginald David LUBKA, Appellant,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION MOTOR VEHICLE DIVISION and Iowa Department of Inspections and Appeals, Appellees.**

No. 98–214.

Supreme Court of Iowa.

Sept. 9, 1999.

Andrew P. Nelson of Meyer, Lorentzen & Nelson, Decorah, for appellant.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General, and Kerry Anderson, Assistant Attorney General, for appellees.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

LARSON, Justice.

Reginald Lubka's driver's license was revoked by the department of transportation (DOT) for driving with a blood alcohol level above .10. *See* Iowa Code § 321J.12 (1997). The district court affirmed the revocation on judicial review, and Lubka appealed, claiming investigating officers improperly took a blood specimen from him. We affirm.

## I. *Facts.*

Evidence received in the administrative hearing showed that Lubka was injured in a motorcycle accident on June 7, 1997, and taken to a hospital emergency room. An officer, suspecting Lubka was intoxicated, recruited a deputy sheriff to conduct implied consent proceedings. The deputy read from a standard implied consent advisory form and requested a blood specimen. Although Lubka claims he first answered that he would not submit to the test, the record does not support that. The deputy asked for Lubka's consent three more times, and each time Lubka stated he did not understand what was being read to him or what he was being asked to do. He even said he did not own a motorcycle, so he could not have been involved in a motorcycle accident. Lubka's wife was with him at the hospital. The deputy told her she could contact an attorney, and she did. Based on her conversations with the attorney, Lubka's wife advised him to refuse a blood test. However, Lubka did not personally refuse or consent to a test.

Convinced that Lubka still did not understand what was going on, the deputy asked the attending physician to sign a form, pursuant to Iowa Code section 321J.7, certifying that Lubka was incapable of making a decision about the blood test. The doctor signed the form and blood was drawn. Lubka's blood alcohol content was over .10 and the DOT revoked his driver's license on July 3, 1997.

## II. *The Use of the Doctor's Certificate.*

Under certain circumstances a physician's certificate may authorize the withdrawal of body specimens for alcohol testing. Iowa Code section 321J.7 provides:

A person who is dead, unconscious, or otherwise in a condition rendering the person incapable of consent or refusal is deemed not to have withdrawn the consent provided by section 321J.6 [the implied consent law], and the test may be given if a licensed physician certifies in advance of the test that the person is dead, unconscious, or otherwise in a condition rendering that person incapable of consent or refusal.

██ The district court found substantial evidence supported the administrative

law judge's finding that Lubka was incapable of refusing or consenting to the test. Such a finding will control on judicial review if supported by substantial evidence. Iowa Code § 17A.19(8) (court may modify, reverse or grant other appropriate relief if agency action is not supported by substantial evidence); *Ramsey v. Iowa Dep't of Transp.*, 576 N.W.2d 103, 105 (Iowa 1998). Substantial evidence means evidence that a reasonable person would accept as adequate to reach the same finding. *Ringland Johnson, Inc. v. Hunecke*, 585 N.W.2d 269, 272 (Iowa 1998).

The evidence at the hearing included this testimony by the deputy:

Q. [to the deputy] What did you do—or what did you say to him upon making contact? A. Introduced myself and my purpose of being there, and at that time I read the implied consent form to him.

Q. When you say the implied consent form, are you referring to the advisory? A. Yes.

Q. Is it at that time that you made the written request for a blood specimen of Mr. Lubka? A. Yes, it is.

Q. What was his response to that request? A. He advised he didn't understand.

Q. Did he indicate what, exactly, he didn't understand? A. That he couldn't remember anything, didn't understand—that he doesn't own a motorcycle, so, therefore, he couldn't have been involved in an accident with one.

Q. What happened next? A. I told—asked him—well, he would have to make a decision, and he said he didn't hear that other part—the motorcycle later and once he didn't understand. So I reread the implied consent form to him.

Q. And what was his response to the rereading of the form to him? A. Once again he said he didn't understand.

Q. And then? A. I told him that he'd have to make a decision, and at that time [he] was consulting with his wife

and they wanted to call an attorney, so I granted him permission to call whoever they wanted to call.

. . . .

Q. So what happened [after Lubka's wife contacted the attorney]? A. She come back and she told her husband that the attorney she contacted said not to test, said not to sign anything.

Q. What was Mr. Lubka's response to that? A. I then asked Mr. Lubka—I said, now—I told him it was still his choice, and, you know, I asked if he understood that his attorney said not to sign anything or not to take the test, and I asked him again, and he once again stated he didn't understand.

Q. What did you do then? A. I asked him one more time, and he said he didn't understand. So I presented the doctor with the form indicating that he was incapable of rendering a decision and the doctor agreed with me and signed the form [and] withdrew the blood.

Q. Why did you present the doctor with this form? A. Because it's the doctor's decision that renders somebody capable of making a decision.

Q. So, apparently, you thought Mr. Lubka was incapable at the start? A. Yes.

Q. Why is that? A. He just—he couldn't give me an answer. He wouldn't give me an answer. He kept repeating that he didn't understand. He told me that himself.

Q. He never told you that he would take the blood test? A. No.

Q. He never told you that he would refuse to take the blood test? A. No, he kept saying that he didn't understand.

Lubka contends he was not "incapable" of making the decision because his wife, who had talked to an attorney, refused on his behalf by telling him in the presence of the deputy that he should refuse. The record shows, however, that even after

Lubka's wife advised him to refuse the test he made no response except to say he did not understand.

 This issue, whether a spouse may make and communicate an implied-consent decision for a licensee, is apparently one of first impression in this court. Under our implied-consent statute, a licensee is deemed to consent to withdrawal of blood, breath, or urine. Iowa Code § 321J.6. The right to revoke that consent is, we believe, a personal one to be exercised by the licensee, if able, otherwise by a doctor's certificate. We find nothing in our implied-consent statute that suggests that decision may be made by another. Lubka, of course, could consent or refuse with the advice of another, such as an attorney or his wife, but in the end the decision was his if he was capable.

We reject Lubka's legal argument that his wife refused a blood test for him, and we agree with the district court's conclusion that Lubka was incapable, under Iowa Code section 321J.7, of making the decision.

### III. *The Effect of Iowa Code Section 321J.13(4).*

Prior to the enactment of Iowa Code section 321J.13(4) in 1986, parallel proceedings in a case involving an allegedly drunk driver, *i.e.,* a criminal prosecution and a separate administrative proceeding to revoke the driver's license, were held to be separate and distinct. *See, e.g., Westendorf v. Iowa Dep't of Transp.,* 400 N.W.2d 553, 556 (Iowa 1987). However, section 321J.13(4) linked the two proceedings and allowed administrative proceedings to be reopened "in the limited situation in which an adjudication on the admissibility of evidence relevant to the implied consent law ha[d] been made in a criminal proceeding growing out of the same facts." *Manders v. Iowa Dep't of Transp.,* 454 N.W.2d 364, 366 (Iowa 1990). The court in Lubka's criminal case suppressed the blood test, and Lubka claims that he should have been al-

lowed to reopen the record in his separate revocation case to establish that fact.

 The problem with this argument is that the provision on which he relies was repealed by an amendment effective July 1, 1997. This was after Lubka's arrest but before the district court suppressed the test results in the criminal proceeding. In *Wieslander v. Iowa Department of Transportation,* 596 N.W.2d 516 (Iowa 1999), we held that at the time the statute was repealed, the licensee had only a hope or expectation that the court would suppress the test in the parallel criminal case. As of the time the statute was repealed, Lubka, like the licensee in *Wieslander,* had no acquired right to the benefit of the repealed statute.

We affirm the revocation of Lubka's license and deny his application for attorney fees on appeal.

**AFFIRMED.**