# IN THE SUPREME COURT OF IOWA

No. 17–1232

Filed October 19, 2018

**STATE OF IOWA,**

    Appellee,

vs.

**JEREMY M. WERNER,**

    Appellant.

---

Appeal from the Iowa District Court for Iowa County, Patrick R. Grady (motion to suppress), Andrew B. Chappel (trial), and Mitchell E. Turner (sentencing), Judges.

Defendant appeals his conviction for driving while his license was revoked, claiming the district court erred in denying his motion to suppress. **REVERSED AND REMANDED.**

Brandon Brown and Gina Messamer of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry, Brown & Bergmann, L.L.P., Des Moines, and Peter Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, David S. Gorham, Special Assistant Attorney General, and Robin G. Formaker, Assistant Attorney General, for appellee.

**MANSFIELD, Justice.**

This case, although procedurally different from *Rilea v. Iowa Department of Transportation*, ___ N.W.2d ___ (Iowa 2018), presents many of the same issues. A motorist was stopped in August 2016 by an Iowa Department of Transportation (IDOT) Motor Vehicle Enforcement (MVE) officer for speeding in a construction zone. The MVE officer then determined that the motorist's driver's license had been revoked pursuant to Iowa Code chapter 321J. He arrested the motorist and took him to jail. The motorist was charged with, and later convicted of, driving while revoked in violation of Iowa Code 321J.21 (2016).

This appeal presents the question of whether the motorist's motion to suppress evidence resulting from the stop should have been granted. Echoing the arguments in *Rilea*, the motorist maintains that the district court erred in finding the IDOT MVE officer had authority to stop and arrest him. He contends that IDOT MVE officers lacked authority in August 2016 to engage in general traffic enforcement under Iowa Code chapter 321. He also contends that the stop and arrest cannot be sustained as a citizen's arrest under section 804.9.

We conclude the motorist's legal position is correct and, therefore, reverse the denial of the motion to suppress and vacate the conviction and sentence. In reaching this conclusion, we rely mostly on today's decision in *Rilea*, although we pause to consider a number of arguments raised only in this case.

### I. Facts and Procedural History.

On August 18, 2016, Ryan Glade, a MVE officer with the IDOT, was on patrol in Iowa County. He saw a black BMW traveling eastbound on I-80 at what appeared to be in excess of the posted speed limit of fifty-five miles per hour for a construction zone. Officer Glade used a LIDAR (laser

scanning) unit to detect the vehicle's actual speed of seventy-two miles per hour.

Officer Glade pulled over the vehicle. The defendant, Jeremy Werner, was the driver and sole occupant of the vehicle. Werner admitted that he did not have a driver's license. Officer Glade ran a license check, which indicated that Werner's driving privileges had been revoked. Officer Glade gave Werner a citation for speeding. Officer Glade also arrested Werner and transported him to the Iowa County Jail in Marengo. That day, Officer Glade filed a complaint charging Werner with driving while revoked, a serious misdemeanor. *See* Iowa Code § 321J.21(1). A trial information was filed on August 30.

On December 20, Werner filed a motion to suppress, asserting that Officer Glade was not authorized to make the traffic stop of his vehicle. Following a hearing, the district court denied the motion to suppress on April 27, 2017, for two reasons. First, the court explained that Officer Glade was a peace officer within the meaning of Iowa Code sections 321.1(50) and 801.4(11). The court noted that Iowa Code section 321.492 authorizes a peace officer "to stop a vehicle to require exhibition of the driver's license of the driver" and "to serve a summons or memorandum of traffic violation." *See id.* § 321.492(1). Second, the court concluded that "even if [Officer] Glade did not have the authority as an IDOT officer to stop Werner's vehicle, his conduct still resulted in a valid citizen's arrest." *See id.* § 804.9(1).

Thereafter, the parties agreed to a trial on the minutes of testimony, and Werner was convicted of driving while under revocation. On July 17, Werner was sentenced to serve two days in jail and to pay a $1000 fine plus surcharges.

Werner appealed his conviction and sentence, claiming that his motion to suppress should have been granted, and we retained the appeal.

## II. Standard of Review.

When suppression of evidence is urged on statutory grounds, we review for correction of errors at law. *See State v. Lamoreux*, 875 N.W.2d 172, 176 (Iowa 2016). We will affirm if "the court correctly applied the law and substantial evidence supports the court's fact-finding." *Id.* (quoting *State v. Walker*, 804 N.W.2d 284, 289 (Iowa 2011)).

## III. Analysis.

This appeal requires us to determine the lawfulness of a stop performed by an IDOT MVE officer for speeding on August 18, 2016, before Iowa Code section 321.477 was amended. The State maintains that the IDOT was authorized to make the stop by virtue of authority previously conferred by either Iowa Code chapter 321 or Iowa Code section 804.9. We have generally explained why we disagree with those arguments in another case decided today—*Rilea*. Rather than repeat that discussion, we incorporate it here by reference.

This case presents some additional arguments not raised in *Rilea*, however. We will now turn to them.

**A. Iowa Code Sections 801.4(11) and 321.492.** First, the State argues that Iowa Code section 801.4(11) and Iowa Code section 321.492, when read together, gave Officer Glade the authority to pull over Werner's vehicle. The former defines "peace officers" to include "[s]uch employees of the [IDOT] as are designated '*peace officers*' by resolution of the [IDOT] under section 321.477." Iowa Code § 801.4(11)(*h*). The latter states, "A peace officer is authorized to stop a vehicle to require exhibition of the driver's license of the driver, [and] to serve a summons or memorandum

of traffic violation." *Id.* § 321.492. Therefore, according to the State, IDOT officers can stop vehicles for any "traffic violation."

In *Merchants Motor Freight. Inc. v. State Highway Commission*, we held that the enforcement powers of the IDOT's predecessor were circumscribed by section 321.477. 239 Iowa 888, 892–93, 32 N.W.2d 773, 775–76 (1948). In that case, we were not persuaded by the highway commission's reliance on Iowa Code section 321.492. *Id.* at 892–93, 32 N.W.2d at 776. We explained as follows:

> Appellants further contend that under Section 321.492, its employees, designated in Section 321.477, are given specific authority to act in regard to registration and licenses, it being their theory that these employees are peace officers. Section 321.492 does grant to any peace officer the right to inspect registrations, but the fallacy of appellant's position lies in the fact that the employees are not peace officers. Section 321.1(45) defines a peace officer for the purposes of the chapter to mean "every officer authorized to direct or regulate traffic or to make arrests for violations of traffic regulations in addition to its meaning in section 748.3." Section 321.1(65) defines Traffic to mean "pedestrians, ridden or herded animals, vehicles, street cars, and other conveyances either singly or together while using any highway for purposes of travel." To say that, when the legislature conferred on certain highway commission employees "the authority of peace officers to control, direct, and weigh traffic on the highways" it intended to vest them with the authority conferred by Section 321.1(45) and Section 748.4 is without merit. The authority of the defendants, under the motor vehicle statutes, is limited to size, weight and load of vehicles and the trial court was correct in so holding.

*Id.*

The State points out that the relevant statutes have changed since *Merchants Motor* was decided in 1948. In 1976, the legislature adopted our Criminal Code. 1976 Iowa Acts ch. 1245. In the Code, "peace officer" was defined to include "[s]uch employees of the [IDOT] as are designated 'peace officers' by resolution of the [IDOT] under [Iowa Code section 321.477]." *Id.* ch. 1245, ch. 2, § 104 (codified as amended at Iowa Code

§ 801.4(11)(*h*) (2016)).  At the same time, Iowa Code section 321.1 was amended to provide that " '[p]eace officer' means every officer authorized to direct or regulate traffic or to make arrests for violations of traffic regulations in addition to its meaning in [Iowa Code section 801.4]."  *Id.* ch. 1245, ch. 4, § 271 (codified as amended at Iowa Code § 321.1(50) (2016)).  Thus, the State maintains that the 1976 enactment of the Criminal Code has superseded the holding of *Merchants Motor.*

We disagree.  We do not believe the general assembly broadened the authority of IDOT officers to encompass general traffic enforcement when it adopted the Criminal Code in 1976.  Iowa Code sections 80.22, 321.2, and 321.477 were *not* changed in 1976.  These provisions are specific and they deny IDOT "peace officers" the authority to engage in general traffic enforcement.  *See* Iowa Code § 80.22 ("All other departments and bureaus of the state are hereby prohibited from employing special peace officers or conferring upon regular employees any police powers to enforce provisions of the statutes which are specifically reserved by 1939 Iowa Acts, ch. 120, to the department of public safety."); *see also* Iowa Code § 4.7 (noting that in the event of an irreconcilable conflict between a general provision and a special provision, the special provision shall prevail).  We read section 321.492 as authorizing IDOT MVE officers "to serve a summons or memorandum of traffic violation" when the subject matter of the violation is otherwise within their enforcement power.[1]

Notably, even after the 1976 Criminal Code was adopted, we held that "DOT officers' power to intrude on individuals is strictly limited by the

---

[1]As Werner points out, the State's interpretation would mean that probation officers, parole officers, special security officers of regents institutions, conservation officers, and certain employees of aviation authorities could all set up shop along the interstate highways and ticket speeding vehicles.  *See* Iowa Code § 801.4(11)(*d*), (*e*), (*f*), (*g*), (*i*).

Iowa Code to inspecting for registration, weight, size, load and safety violations." *State v. A-1 Disposal*, 415 N.W.2d 595, 599 (Iowa 1987) (citing Iowa Code §§ 321.476, .477, .492 (1985)).

**B.  School Bus Safety Statutes.**  Second, the State raises a concern that IDOT MVE officers would be unable to protect schoolchildren who have to take school buses to and from school.  *See* Iowa Code §§ 321.372–.380 (2016) (setting forth school bus-related requirements).  But there is specific language empowering *all* chapter 321 peace officers to enforce these statutes.  Iowa Code section 321.380 provides, "It shall be the duty of *all peace officers and of the state patrol* to enforce the provisions of sections 321.372 to 321.379."  *Id.* § 321.380 (emphasis added).  This comprehensive language makes clear that not only the department of public safety, but indeed "all peace officers," have the duty to enforce the school bus provisions.

**C.  Whether a Citizen's Arrest Occurred.**  Third, because this case (unlike *Rilea*) involves an actual arrest rather than just a speeding ticket, the State insists that the actions of the IDOT MVE officer fall easily within the parameters of a citizen's arrest.  The State notes that Officer Glade took Werner to the county jail, which meant that he would have received an initial appearance before a magistrate.  *See id.* § 804.24 (requiring a private person who has arrested another to take the arrested person before a magistrate or to deliver the arrested person to a peace officer who may take the arrested person before a magistrate accompanied by the private person).

Two problems exist with this argument.  First, Officer Glade made the stop as part of his official duties, not as a "private person."  *See id.* § 804.9.  He detected the violation using LIDAR equipment and relied upon his official status to pull over Werner.  Second, there is no indication that

Officer Glade himself went with Werner before a magistrate, as is required for a citizen's arrest. Iowa Code section 804.24 provides,

> A private citizen who has arrested another for the commission of an offense must, without unnecessary delay, take the arrested person before a magistrate, or deliver the arrested person to a peace officer, who may take the arrested person before a magistrate, but the person making the arrest must also accompany the officer before the magistrate.

Werner was incarcerated on August 18 and, according to the record in this case, did not see the magistrate until the following day, August 19.

**D. Community Caretaking.** Fourth, the State urges that IDOT MVE officers may engage in community caretaking activity in construction work zones to assure the safety of all concerned. *See* Iowa Code § 313.12 (giving IDOT supervisory authority over construction on the primary road system); *see also State v. Coffman*, 914 N.W.2d 240, 244–45 (Iowa 2018) (discussing the community caretaking doctrine). The implication is that IDOT officers should be able to make vehicle stops for safety purposes. We do not foreclose the possibility that IDOT officers could make valid community caretaking stops under some circumstances, although the community caretaking doctrine is only a constitutional principle, not an independent grant of statutory authority. This case, though, involved law enforcement activity, not bona fide community caretaking. *Cf. id.* at 258. Officer Glade acknowledged he was "patrolling" and observed a car traveling at seventy-two miles per hour in a fifty-five miles-per-hour zone. That prompted him to make the stop.

**E. A Stop for Driving While Under Revocation?** Fifth, the State argues that Werner could have been stopped by Officer Glade for driving while under revocation in violation of Iowa Code section 321J.21 because Iowa Code sections 80.22, 321.2, and 321.477 do not limit the enforcement authority of IDOT MVE officers under chapter 321J.

Whatever merit this argument may have in other contexts, there is no indication Officer Glade knew or suspected Werner's driver's license had been revoked for operating while intoxicated when he made the August 18 stop. *See State v. Pettijohn*, 899 N.W.2d 1, 15 (Iowa 2017) ("We determine whether reasonable suspicion existed in light of the totality of the circumstances confronting the officer, 'including all information available to the officer at the time the decision to stop is made.' " (quoting *State v. Vance*, 790 N.W.2d 775, 781 (Iowa 2010))).

Finally, we note the State does not contest that suppression is the appropriate remedy if Officer Glade lacked authority to make the stop and arrest of Werner on August 18.

Accordingly, for the foregoing reasons, we vacate Werner's conviction and sentence, reverse the denial of his motion to suppress, and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**