MANSFIELD, Justice.
*756 This case began when a driver tried to reverse course. But it presents the question whether our court should reverse course. Specifically, should we overrule precedent and apply the exclusionary rule to driver's license revocation proceedings when an Iowa statute dictates otherwise?
In Westendorf v. Iowa Department of Transportation , 400 N.W.2d 553, 557 (Iowa 1987), superseded by statute as recognized by Brownsberger v. Department of Transportation , 460 N.W.2d 449, 450-51 (Iowa 1990), we declined to apply the exclusionary rule so long as the enumerated statutory conditions for license revocation were met. Later, the general assembly enacted a limited exception to Westendorf . See Iowa Code § 321J.13(6) (2017). This requires the Iowa Department of Transportation (DOT) to rescind revocation of a driver's license if there has been a criminal prosecution for operating while intoxicated (OWI) and the criminal case determined that the peace officer did not have reasonable grounds to believe a violation of the OWI laws had occurred or that the chemical test was otherwise inadmissible or invalid. We affirmed the limited nature of that exception in Manders v. Iowa Department of Transportation , 454 N.W.2d 364, 366-67 (Iowa 1990).
In the present case, a driver was pulled over by a DOT officer after he stopped on I-80 to make unauthorized use of a median crossover in order to turn around and head in the other direction. It turned out he had an open container in his car and smelled of an alcoholic beverage. After he refused all testing, his license was suspended for one year, but he was never charged with OWI. Adhering to our Westendorf and Manders precedents, the DOT upheld his license suspension. Notably, the driver's only challenge to the stop was that the DOT officer lacked statutory authority; the driver did not contest reasonable suspicion for the stop. The district court also denied relief, leading to this appeal.
We are now asked, in effect, to expand the legislature's post- Westendorf statutory exception and apply the exclusionary rule to all driver's license revocation proceedings if there was any problem with the stop. For the reasons discussed herein, we decline to do so and instead adhere to the legislative boundaries of the exception when the only legal flaw in the stop was the officer's lack of statutory authority. Accordingly, we affirm the judgment of the district court upholding the license revocation in this case.
I. Facts and Procedural History.
On May 9, 2017, at approximately 12:26 a.m., Officer Austin Wilson of the DOT was patrolling westbound on I-80, a four-lane divided interstate highway, in Jasper County. At a location where there was a median crossover marked for use by authorized vehicles only, Officer Wilson observed an eastbound vehicle coming to a stop. It appeared the driver was preparing to use the crossover, turn around, and head westbound. Officer Wilson took the crossover himself and when the driver of the eastbound vehicle decided to keep going eastbound on I-80, Officer Wilson pulled it over using his overhead lights.
*757 The driver of the vehicle, Alex Westra, admitted he had been about to make a turnaround using the median crossing and knew it was a bad idea. Officer Wilson noticed that Westra had bloodshot and watery eyes and saw an open container of Four Loko (an alcoholic beverage) within arm's reach. Westra initially denied knowing there was a beverage can in his vehicle. He refused to hand over the beverage can and refused to step out of his vehicle.
When a backup officer arrived, Officer Wilson removed Westra from his vehicle. Officer Wilson could smell the odor of an alcoholic beverage coming from Westra's person. In addition, on inspection, the can of Four Loko had only one-quarter of its contents remaining.
Westra declined to undergo any preliminary testing for intoxication. Officer Wilson escorted Westra to the Jasper County jail where Westra was read the implied consent advisory and made two phone calls. Westra then refused to take the Datamaster chemical test.
Westra was never charged with OWI but was charged with two traffic violations-stopping on a travelled portion of I-80 in violation of Iowa Code section 321.354 and driving with an open container of an alcoholic beverage in violation of section 321.284. Westra filed a motion to suppress in the traffic case, contending that Officer Wilson of the DOT lacked statutory authority to stop him on May 9 on I-80. See Rilea v. Iowa Dep't of Transp. , 919 N.W.2d 380, 383 (Iowa 2018). The motion was overruled, and Westra was found guilty and sentenced to pay fines of $ 100 and $ 200 respectively for the two violations. Westra appealed to the district court, however, which found that the DOT stop was invalid and dismissed the two citations.
Meanwhile, the DOT notified Westra that his driver's license was being revoked for one year under Iowa Code section 321J.9. Westra requested an administrative hearing, and on July 11 he received a telephonic hearing before an administrative law judge (ALJ). The issue at the hearing was whether DOT Officer Wilson had statutory authority to stop Westra's vehicle. The ALJ entered a decision on August 15 finding that he did. The ALJ reasoned that "Officer Wilson was operating within his authority as a designated peace officer under [section] 321J.8(3)" relating to enforcement of OWI laws. As the ALJ explained,
Although he could not have been assured that the driver of the pickup he observed that night was impaired by alcohol or other substances, he did see it was being operated in an erratic or illegal manner which can be a part of a finding of reasonable grounds for a possible violation of section 321J.2 as set out above. It is reasonable to find the Appellant's actions of coming to a stop on a traveled portion of a two-lane interstate highway and doing so in a proximity to a median cross-over lane he could not legally use were valid reasons for Officer Wilson [to] perform a traffic stop at that time.
Westra appealed this decision to the director of the DOT. On September 21, the director agreed with the ALJ that Officer Wilson had statutory authority to enforce the OWI laws as to Westra. He also found that Westra's argument for suppression of his refusal to take the chemical test was immaterial because the exclusionary rule did not apply to this driver's license revocation proceeding.
Westra petitioned for judicial review in the Polk County District Court. Following a hearing, the district court issued a ruling on May 17, 2018. The district court found that "Officer Wilson did not have statutory authority to stop Westra." However, it declined *758 to hold under article I, section 8 of the Iowa Constitution that the exclusionary rule applied to Westra's license revocation proceeding. It also rejected Westra's alternative argument that article I, section 9 of the Iowa Constitution (the Due Process Clause) required exclusion of Westra's refusal to take the Datamaster chemical test. Westra appealed and we retained the appeal.
II. Standard of Review.
Factual findings of the DOT are reviewed for substantial evidence unless the underlying claim is a constitutional one, in which case review of facts is de novo. See Iowa Code § 17A.19(10)(f ). Both parties agree that we do not defer to the DOT's interpretations of Iowa Code section 321J.13(6) or, of course, to the DOT's views on the Iowa Constitution. See id. § 17A.19(10)(c ) ; Bearinger v. Iowa Dep't of Transp. , 844 N.W.2d 104, 106 (Iowa 2014).
III. Legal Analysis.
A. Whether Officer Wilson Had Authority to Stop Westra. The first question is whether Officer Wilson had statutory authority to stop Westra on I-80 on May 9, 2017. Westra's claim goes away if Officer Wilson had such authority. In Rilea , we held that until new legislation became effective on May 11, DOT officers lacked authority to issue traffic citations unrelated to operating authority, registration, size, weight, or load. 919 N.W.2d at 383. However, we also clarified that Iowa Code chapter 321J provided a separate font of authority, and "an IDOT [motor vehicle enforcement] officer, if properly trained, can enforce chapter 321J." Id. at 392. In doing so, we relied on Iowa Code section 321J.1(8)(e ), which states that a "peace officer" for purposes of chapter 321J includes "[a]ny other law enforcement officer who has satisfactorily completed an approved course relating to motor vehicle operators under the influence of alcoholic beverages." Id.
Yet we decided another case the same day. See State v. Werner , 919 N.W.2d 375 (Iowa 2018). Werner involved a motorist who had been stopped by a DOT officer for speeding and who was only later determined to have been driving under revocation in violation of Iowa Code section 321J.21. Id. at 376. Under these circumstances, we concluded the State could not rely on the DOT officer's chapter 321J enforcement authority. Id. at 380. We noted, "Whatever merit this argument may have in other contexts, there is no indication Officer Glade knew or suspected Werner's driver's license had been revoked for operating while intoxicated when he made the August 18 stop." Id.
We believe the quoted language from Werner controls here. On this record, we are not persuaded that Officer Wilson "knew or suspected" Westra was driving under the influence when he stopped his vehicle. Officer Wilson's testimony contains no inkling of this.
The DOT found that Officer Wilson could rely on his enforcement authority in chapter 321J based on the following reasoning: "[H]e did see [the vehicle] was being operated in an erratic or illegal matter which can be a part of a finding of reasonable grounds for a possible violation of section 321J.2 as set out above." If this were a finding that Officer Wilson was actually engaged in OWI enforcement when he stopped Westra, it might carry the day. However, this was merely a finding that the driving behavior Officer Wilson observed could have helped provide the basis for a reasonable suspicion finding. Under Werner , Officer Wilson's stop was invalid.
B. Whether Article I, Section 8 Required Suppression of Westra's Refusal *759 to Take the Chemical Test. Because we agree with the district court that Officer Wilson lacked statutory authority to stop Westra on I-80, we must consider whether the Iowa Constitution required suppression of Westra's refusal to take the chemical test and, thus, would require us to unwind his license revocation. To do so, we will first review the relevant statutes and caselaw relating to license revocation hearings. Then we will address the heart of Westra's argument.
1. License revocations in Iowa and the evidence that can be considered. As of 1985, Iowa law provided that a license revocation hearing
shall be limited to the issues of whether a peace officer had reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321.281 [now section 321J.2] and either of the following:
a. Whether the person refused to submit to the test or tests.
b. Whether a test was administered and the test results indicated an alcohol concentration [above the legal limit].
Iowa Code § 321B.26(a )-(b ) (1985).
In Westendorf , a case decided under this law, we held that the Fourth Amendment exclusionary rule did not apply to driver's license revocation proceedings. 400 N.W.2d at 557. The driver sought to challenge his license revocation on the ground that the police officer had lacked probable cause to stop his vehicle. Id. at 554. The district court agreed and overturned the revocation. Id. We, however, reversed and reinstated the revocation. Id. at 557.
We pointed out that "the statutory conditions for revocation by the department were clearly satisfied." Id. at 555. We acknowledged,
Had the evidence demonstrated that any one of the listed statutory conditions was not present-for example that the officer did not have "reasonable grounds to believe Westendorf had been operating the motor vehicle in violation of section 321.281" the department would not have been warranted in revoking Westendorf's driver's license.
Id. Yet in the absence of such a statutory ground for excluding the evidence, we held that the driver could not challenge his license revocation under the Fourth Amendment. Id. at 556-57. We explained,
The benefit of using reliable information of intoxication in license revocation proceedings, even when that evidence is inadmissible in criminal proceedings, outweighs the possible benefit of applying the exclusionary rule to deter unlawful conduct. Consequently, the exclusionary rule formulated under the fourth and fourteenth amendments was inapplicable in this license revocation proceeding.
Id. at 557.
The following year, the general assembly amended the law to provide drivers with certain additional grounds for challenging license revocations. See 1988 Iowa Acts ch. 1214, § 2 (codified at Iowa Code § 321J.13(4) (1989)). In current form, this provision reads,
b. The person shall prevail at the [license revocation] hearing if, in the criminal action on the charge of violation of section 321J.2 or 321J.2A resulting from the same circumstances that resulted in the administrative revocation being challenged, the court held one of the following:
(1) That the peace officer did not have reasonable grounds to believe that a violation of section 321J.2 or 321J.2A had occurred to support a request for or to administer a chemical test.
*760 (2) That the chemical test was otherwise inadmissible or invalid.
Iowa Code § 321J.13(6)(1)-(2) (2017).
Two years thereafter, in Manders , we upheld another driver's license revocation, again approving of the DOT's refusal to consider the driver's claim that the stop of his vehicle lacked reasonable cause. 454 N.W.2d at 365. We also made clear that the 1988 amendment applied only "in the limited situation in which an adjudication on the admissibility of evidence relevant to the implied consent law has been made in a criminal proceeding growing out of the same facts." Id. at 366.
Later that same year, in Brownsberger , we confronted the case of a driver whose license had been revoked but who had received a favorable ruling on his motion to suppress in the parallel criminal prosecution. 460 N.W.2d at 450. We concluded,
By its terms, the statute binds the DOT to certain action taken by the district court in separate criminal proceedings arising out of the same circumstances. Moreover, the remedy fashioned by the legislature is clearly exclusionary in nature. The department must rescind any license revocation that flows from police action which is subsequently found by the court to be without reasonable grounds for belief that the OWI law has been violated.
Id. at 451.
More recently, in State v. Taeger , 781 N.W.2d 560, 566 (Iowa 2010), a driver claimed the State had sought "to avoid the application of Iowa Code section 321J.13(6) by preemptively moving to dismiss the criminal OWI action when it became clear that he would prevail on the motion to suppress." We reviewed the landscape as already filled in by Westendorf , the 1988 amendment, Manders , and Brownsberger . Id. at 565-66. We then made clear that a dismissal to avoid the effects of section 321J.13(6) would not be "in the furtherance of justice" as required by Iowa Rule of Criminal Procedure 2.33(1) governing dismissals of criminal actions. Id. at 566-67.
Westra does not dispute that the literal terms of Iowa Code section 321J.13 provide him no relief. The section expressly provides that the revocation hearing "shall be limited to" whether a peace officer had reasonable grounds to believe the driver was operating a motor vehicle under the influence and whether the driver refused to submit to chemical testing (or had an alcohol concentration in excess of the legal limit). Iowa Code § 321J.13(2). Westra does not dispute that those two preconditions for revocation were met. Additionally, to benefit from section 321J.13(6), Westra must have obtained a ruling "in the criminal action" that the chemical test "was otherwise inadmissible or invalid." Id. § 321J.13(6)(b ). That did not occur.
Nonetheless, Westra argues that it would be incongruous to permit challenges to the legality of a driver stop to be raised in a revocation proceeding only when there was a parallel criminal proceeding in which a motion to suppress is granted. As he puts it, the enactment of Iowa Code section 321J.13(6) "seemingly erodes" Westendorf 's cost-benefit rationale. He argues,
Unfortunately, what was not contemplated by the legislature was factual scenarios like the present one where a license holder is not afforded the protections of Iowa Code Section 321J.13(6) either because a criminal charge for OWI is not filed or was voluntarily dismissed before a suppression ruling could be obtained.
Regardless of the possible merits of these policy arguments, we are not free to rewrite the statute. In Manders , which we decided only two years after the predecessor to Iowa Code section 321J.13(6) was *761 enacted, we found that the statute required "an adjudication on the admissibility of evidence ... in a criminal proceeding growing out of the same facts." 454 N.W.2d at 366. There was no such adjudication here. Westra never faced an OWI criminal prosecution.
Furthermore, Iowa Code section 321J.13 has been amended a host of times since 1990. Most notably, the general assembly deleted the provision in question in 1997, see 1997 Iowa Acts ch. 104, § 31 (removing Iowa Code § 321J.13(4) (codified at Iowa Code § 321J.13 (Supp. 1997))), but then restored it in 1999. See 1999 Iowa Acts ch. 13, § 22 (codified at Iowa Code § 321J.13(6) (Supp. 1999)). This makes the argument that the legislature didn't realize what it was doing hard to sustain. See Welch v. Iowa Dep't of Transp. , 801 N.W.2d 590, 599-600 (Iowa 2011) ("These guiding principles are especially salient when the general assembly has reenacted or repeatedly amended the statutory provision in question without disturbing our previous interpretation.").
2. Iowa Code section 804.20. Westra also observes that we have allowed violations of Iowa Code section 804.20 to be grounds for exclusion of a refusal to take the chemical test in driver's license revocation proceedings. See Didonato v. Iowa Dep't of Transp. , 456 N.W.2d 367, 369 (Iowa 1990) ; Ferguson v. Iowa Dep't of Transp. , 424 N.W.2d 464, 466 (Iowa 1988), abrogated by State v. Hicks , 791 N.W.2d 89, 94 (Iowa 2010). But this rule of exclusion is longstanding and predates Westendorf and Manders . See Fuller v. Iowa Dep't of Transp. , 275 N.W.2d 410, 411 (Iowa 1979) (announcing this rule). When we decided Fuller , the first case announcing this rule, chapter 321J's predecessor did not expressly limit the issues that could be raised in revocation proceedings. See Iowa Code § 321B.8 (1977). In 1984, the legislature amended the license revocation law to expressly limit the issues that could be raised in license revocation proceedings. See 1984 Iowa Acts ch. 1292, § 17 (codified at Iowa Code § 321B.26 (1985) ) (changing "its scope shall cover" to "its scope shall be limited to"). Nonetheless, without discussing this 1984 amendment, we later reaffirmed Fuller in Ferguson and Didonato . See Ferguson , 424 N.W.2d at 466 ; see also Didonato , 456 N.W.2d at 369. In Didonato we discussed and then expressly distinguished Manders , explaining that section 804.20 was "broadly applicable." 456 N.W.2d at 369. Hence, the argument that Westra raises now with respect to section 804.20 was thoroughly aired and considered by our court twenty-nine years ago.
Iowa Code section 804.20 provides the arrestee with "a limited statutory right to counsel before making the important decision to take or refuse a chemical test under implied consent procedures." State v. Vietor , 261 N.W.2d 828, 831 (Iowa 1978). Section 804.20 thus involves a right to counsel and helps insure that the decision to refuse the test, and subject oneself to license revocation for at least a year, is informed. See State v. Walker , 804 N.W.2d 284, 289-91 (Iowa 2011). Violations of section 804.20 are a simple misdemeanor. See Iowa Code § 804.20 (2017). Accordingly, we reaffirm that the provisions of section 804.20 are "broadly applicable" to license revocation proceedings. Didonato , 456 N.W.2d at 369. Still, that does not provide a reason to overrule our precedent and disregard the specific terms of section 321J.13(6) in a case where section 804.20 does not apply.
3. Article I, section 8. We now come to Westra's principal appellate argument that article I, section 8 of the Iowa Constitution requires suppression of his refusal to take the chemical test. In his view, the legislature *762 cannot limit the scope of the license revocation hearing to exclude such issues.
Looking outside Iowa, most states do not apply the exclusionary rule in driver's license revocation proceedings. See generally Thomas M. Fleming, Annotation, Admissibility, in Motor Vehicle License Suspension Proceedings, of Evidence Obtained by Unlawful Search and Seizure , 23 A.L.R.5th 108 (1994).
Westra cites five cases to the contrary, but they appear to be based largely on interpretation of the specific state statutes that were at issue. For instance, in State v. Lussier , 171 Vt. 19, 757 A.2d 1017, 1021 (2000), the Vermont Supreme Court reasoned as follows in concluding that a driver could raise the constitutionality of the stop in a license suspension proceeding:
[A] rational interpretation of [the Vermont license suspension law] would permit defendants to challenge the reasonableness of the officer's belief based on the fact that it was derived from an unlawful stop. The State seeks a more narrow interpretation, however, which would permit law enforcement officers to make random stops of vehicles for any or no reason at all in the hopes of detecting drunk drivers.... License suspensions could follow the unlawful police conduct as long as at any point after the stop the officer formed a reasonable belief that the defendant was intoxicated. We cannot conceive that the Legislature intended to insert into the civil suspension system all of the statutory rights concerning consent to evidentiary tests, and at the same time to dispense with basic constitutional protections against unreasonable governmental intrusions. Accordingly, we decline the State's invitation to attribute to the Legislature the intent to sanction unconstitutional police conduct in the context of civil suspension proceedings.
(Citations omitted); see also Fla. Dep't of Highway Safety & Motor Vehicles v. Hernandez , 74 So.3d 1070, 1079 (Fla. 2011) ("[R]eading the two statutes together leads to the conclusion that there must be a means for challenging the legality of the suspension when the request for a breath test was not incident to a lawful arrest."); People v. Krueger , 208 Ill.App.3d 897, 153 Ill.Dec. 759, 567 N.E.2d 717, 722-23 (1991) ("[T]he issue here is ... whether the statute should be construed to condition the Secretary of State's power to suspend a driver's license on the presence of a valid arrest."); Schuster v. State Dep't of Taxation & Revenue , 283 P.3d 288, 294 (N.M. 2012) ("[T]he requirement in [New Mexico law] that MVD find that 'the person was arrested' requires a finding that the arrest and police activity leading to the arrest were constitutional."); Watford v. Bureau of Motor Vehicles , 110 Ohio App.3d 499, 674 N.E.2d 776, 778 (Ohio 1996) (per curiam) (relying on Williams v. Ohio Bureau of Motor Vehicles , 62 Ohio Misc.2d 741, 610 N.E.2d 1229, 1231 (Ohio Mun. Ct. 1992), which determined the issue as a matter of statutory construction); Pooler v. Motor Vehicles Div. , 306 Or. 47, 755 P.2d 701, 703 (1988) (en banc) ("[W]e conclude that the legislature must have intended a valid arrest when it used the term 'under arrest' in that statute."). It is true some of these decisions have constitutional elements. See Lussier , 757 A.2d at 1025-27 (adding in dicta that the exclusionary rule under the Vermont Constitution applies to civil suspension proceedings); see also Schuster , 283 P.3d at 294.
At the same time, a number of states have held that their state constitutions do not require exclusion of evidence obtained through unconstitutional traffic stops in administrative license revocation proceedings. See Nevers v. State , 123 P.3d 958, 964 (Alaska 2005) (rejecting the application of *763 the exclusionary rule to administrative license revocation hearings under both the Fourth Amendment and the Alaska Constitution and stating, "[W]e do not believe that applying the exclusionary rule for search and seizure violations would add significant deterrence because the police are already sufficiently deterred from such unlawful conduct by the applicability of the exclusionary rule to all criminal cases that may result from their investigations."); Francen v. Colo. Dep't of Revenue , 411 P.3d 693, 702-03 (Colo. App. 2012) (finding that the exclusionary rule under the United States and Colorado Constitutions does not apply in civil revocation proceedings); Martin v. Kan. Dep't of Revenue , 285 Kan. 625, 176 P.3d 938, 953 (2008) ("Any additional deterrent effect on law enforcement violation of the Fourth Amendment and [the Kansas Constitution] to be gleaned from extension of the rule beyond the criminal DUI setting would be minimal, and it cannot outweigh the remedial imperative of preventing alcohol-and/or drug-impaired drivers from injury or killing themselves or others."), overruling on other grounds recognized by State v. Gray , 306 Kan. 1287, 403 P.3d 1220, 1225 (2017) ; Riche v. Dir. of Revenue , 987 S.W.2d 331, 334 (Mo. 1999) (en banc) (declining to apply the exclusionary rule under the United States and Missouri Constitutions to driver's license revocation proceedings); Jacobs v. Dir., N.H. Div. of Motor Vehicles , 149 N.H. 502, 823 A.2d 752, 755 (2003) (rejecting the argument that the New Hampshire Constitution requires exclusion of evidence obtained from a constitutionally invalid stop in a driver's license suspension proceeding).
We have never directly confronted whether article I, section 8, as opposed to the Fourth Amendment, would require exclusion of evidence obtained from an unconstitutional stop in a license revocation proceeding. On the other hand, we have held that the article I, section 8 exclusionary rule does not apply to probation revocation hearings. Kain v. State , 378 N.W.2d 900, 902-03 (Iowa 1985). In Kain , we rejected a probationer's claim that the fruits of an illegal investigatory stop of his motor vehicle should have been suppressed in his probation revocation hearing. Id.
In State v. Cline , 617 N.W.2d 277, 293 (Iowa 2000) (en banc), abrogated on other grounds by State v. Turner , 630 N.W.2d 601, 606 n.2 (Iowa 2001), we declined to adopt the good faith exception to the exclusionary rule under article I, section 8, reasoning that "[t]o do so would elevate the goals of law enforcement above our citizens' constitutional rights, a result not supported by any principle of constitutional law." Id. at 293. Cline , in other words, placed a high value on the courts not condoning a violation of constitutional rights. See id. at 292-93.
4. The stop in this case. Yet a question arises whether the stop itself in this case was unconstitutional under article I, section 8. Westra does not dispute he violated the traffic laws: he brought his vehicle to a halt on the traveled portion of I-80 while preparing to make an illegal turn across the median. Westra has not explained why a traffic stop that was merely in excess of the officer's statutory authority would trigger a constitutional right to have evidence suppressed. See Werner , 919 N.W.2d at 377 (noting that a case challenging a DOT officer's stop involved the suppression of evidence "on statutory grounds").
There are some out-of-state authorities declining to apply the exclusionary rule in criminal cases where the only issue was the officer's statutory authority. In People v. Wolf , 635 P.2d 213, 214, 218 (Colo. 1981) (en banc), the Colorado Supreme Court declined to apply the exclusionary rule *764 when police arrested the defendant outside the territorial limits of their authority. The court explained, "Despite the fact that the Denver police violated the statutes governing their authority to arrest, the issue, for purposes of application of the exclusionary rule, is whether the arrest was unconstitutional." Id. at 217. Because there was probable cause for the arrest, it "did not offend against constitutional restraints on unreasonable seizures," and the court did not impose the exclusionary rule. Id. at 217-18 ; see also State v. Green , 158 Idaho 884, 354 P.3d 446, 451 (2015) ("Because these subsequently enacted arrest standards are merely statutory, constitutional remedies are inappropriate when those statutes have been violated by police. Although the Legislature could certainly specify suppression as the remedy for police violation of one of these statutes, because such a statutory violation is not a constitutional violation, suppression is not warranted absent such a legislative directive."); State v. Gates , 145 So.3d 288, 304 (La. 2014) ("Even if we assume Officer Bell acted outside of his territorial jurisdiction in the detention of the defendant, suppression of the evidence obtained after Mr. Gates' detention would not be warranted. The statutory rules which delineate the territorial zones of responsibility of various law enforcement agencies are not designed to prevent unreasonable invasions of privacy. There are no constitutional grounds present here to justify the suppression of evidence."); State v. Keller , 361 Or. 566, 396 P.3d 917, 925-26 (2017) (finding that an unauthorized stop by a Washington police officer that would have been legal if performed by an Oregon police officer did not violate the Oregon Constitution and therefore the suppression of evidence in a driving-while-intoxicated case was not required).
In Virginia v. Moore , 553 U.S. 164, 178, 128 S. Ct. 1598, 1608, 170 L.Ed.2d 559 (2008), the United States Supreme Court held that "[w]hen officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest," regardless of whether the procedure violates state law or not. State law, in other words, did not affect the federal constitutional analysis. See id.
We acknowledge that in State v. Brown , 143 Ohio St.3d 444, 39 N.E.3d 496, 502 (2015), the Ohio Supreme Court held that "a traffic stop for a minor misdemeanor offense made by a township police officer without statutory authority to do so violates Article I, Section 14 of the Ohio Constitution." The court reasoned,
The government's interests in permitting an officer without statutory jurisdiction or authority to make a traffic stop for a minor misdemeanor offense in these circumstances is minimal and is outweighed by the intrusion upon the individual's liberty and privacy that necessarily arises out of the stop. Accordingly, the traffic stop and the ensuing search and arrest in this case were unreasonable and violated Article I, Section 14 of the Ohio Constitution, and the evidence seized as a result should have been suppressed.
Id. In that case, a local township police officer pulled over a motorist for a lane violation on the interstate in excess of his statutory authority, eventually leading to a criminal conviction for possession of oxycodone. Id. at 497-98 ; see also State v. Cuny , 257 Neb. 168, 595 N.W.2d 899, 903 (1999) (holding that an extraterritorial stop performed by Pine Ridge Reservation police officers in Nebraska violated the Nebraska Constitution); State v. Barker , 143 Wash.2d 915, 25 P.3d 423, 425-26 (2001) (en banc) (holding that an out-of-state officer's arrest violated the Washington Constitution, which expressly requires "authority of law"). Even these cases, however, do not present the issue of *765 whether the officer's statutory authority may be raised in a civil license revocation proceeding.
We are not persuaded that a stop by a DOT enforcement officer in excess of his statutory enforcement authority, but based upon reasonable suspicion and probable cause, amounts to a constitutional violation. A constitutional violation does not occur every time a peace officer simply fails to adhere to a statute. Only those violations that amount to "unreasonable seizures or searches" violate article I, section 8. In our view, the main purpose of Iowa Code section 80.22 was not to protect the privacy interests of motorists, but rather to preserve the role of the Department of Public Safety (DPS) vis-à-vis other state agencies as the state traffic enforcement entity on public highways. Section 80.22 is part of the organizational chapter dealing with DPS. It was enacted in 1939 when DPS was formed, under the heading, "Duplication in Police Officers Prohibited." 1939 Iowa Acts ch. 120, § 95 (codified at Iowa Code § 80.22 (1946)). We believe its primary goal was to allocate responsibility within state government, not to protect motorists by reducing vehicle stops. Notably, it does not affect the ability of municipal and county officials to enforce traffic laws on the same highways. See Iowa Code §§ 321.1(50), .6, .485 (2017); id. § 331.653(28); see also State v. Snider , 522 N.W.2d 815, 818 (Iowa 1994) ("[A] municipal police officer has authority to arrest for state traffic violations anywhere in the state.").
In State v. Ramirez , 895 N.W.2d 884, 898 (Iowa 2017), we distinguished Cline and declined to grant a motion to suppress in a situation where constitutional rights were not at issue. There we upheld the use in an Iowa criminal prosecution of evidence obtained by a joint federal-state team using an anticipatory warrant that would have been illegal under Iowa law. Id. We said,
Although Ramirez raises article I, section 8 of the Iowa Constitution in his briefing, he does not claim that the search itself would have violated the Iowa Constitution. Rather, he maintains only that Iowa statutes do not authorize this type of search and, therefore, it would violate the Iowa Constitution to admit the results of the search in an Iowa court. We disagree with that broad proposition.
Id.
This language from Ramirez has force in the present case. We conclude that article I, section 8 simply has no play in a license revocation proceeding when the issue is whether to suppress a stop that was supported by reasonable suspicion but exceeded the officer's statutory authority.
In effect, our present task requires us to reconcile two sets of statutes. One of them, Iowa Code sections 80.22, 321.2, and 321.477, did not allow DOT officers, before May 11, 2017, to engage in general traffic enforcement on the public highways of the state. See Iowa Code § 80.22 ; Rilea , 919 N.W.2d at 388-89. The other, section 321J.13, limits the issues that can be raised in a license revocation proceeding; the officer's statutory authority is not one of those issues. It is the legislature's prerogative to determine priorities as between its own statutes.[1]
One final note: "In construing various provisions of chapter 321J, we have continuously affirmed that the primary objective *766 of the implied consent statute is the removal of dangerous and intoxicated drivers from Iowa's roadways in order to safeguard the traveling public." Welch v. Iowa Dep't of Transp. , 801 N.W.2d 590, 594 (Iowa 2011). "[W]e have characterized an administrative license revocation under section 321J.9 as remedial, promoting the overarching remedial purpose of chapter 321J itself." Id. at 601. "A remedial statute, like our implied consent law, should be liberally construed consistent with its statutory purpose." State v. Green , 470 N.W.2d 15, 18 (Iowa 1991).
IV. Conclusion.
Accordingly, for the reasons stated, we affirm the judgment of the district court denying Westra's petition for judicial review.[2]
AFFIRMED.
All justices concur except Wiggins, J., who files a dissenting opinion, and Appel, J., who files a separate dissenting opinion in which Wiggins, J., joins, and McDonald, J., who takes no part.

We do not think the rationale of Taeger applies here. In the first place, Taeger was based on an interpretation of Iowa Rule of Criminal Procedure 2.33(1), which limits the circumstances under which a criminal case, once filed , can be dismissed. See Taeger , 781 N.W.2d at 566-67. Rule 2.33(1) does not come into play where the State never initiated an OWI case against the defendant. We are not at liberty to rewrite the rule.
Nor is the option available to rewrite the text of Iowa Code section 321J.13 to expand the scope of what can be raised in a license revocation proceeding. "[W]e have repeatedly said that 'we are bound by what the legislature said, not by what it should or might have said.' " In re Marshall , 805 N.W.2d 145, 160 (Iowa 2011) (quoting Ranniger v. Iowa Dep't of Revenue & Fin. , 746 N.W.2d 267, 270 (Iowa 2008) ).
Constitutional questions may present different issues, but the question here is one of statutory interpretation.

Westra also argues that not allowing him to raise the lack of statutory authority of the DOT officer in a license revocation proceeding would violate both substantive and procedural due process under article I, section 9 of the Iowa Constitution. Yet we do not see what this argument adds to his exclusionary rule argument under article I, section 8. If it is permissible under article I, section 8 to introduce proof that Westra refused to take the chemical test, such evidence also is admissible notwithstanding article I, section 9. Westra does not attack the driver's license suspension on any basis other than the admissibility of his chemical test.